**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Yolanda McDonald | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. |
| | ) |
| KAREN YARBROUGH, Clerk of the Circuit | ) Hon. Judge |
| Court in her individual capacity, LAUREN | ) |
| RAYMOND, in her individual capacity, COOK | ) |
| COUNTY, as indemnitor, | ) Jury Demanded |
| | ) |
| Defendants. | ) |

## COMPLAINT

Plaintiff, YOLANDA MCDONALD ("McDonald") by and through her undersigned counsel, GIANNA SCATCHELL, ESQ. of DISPARTI LAW GROUP complains as follows against the Defendants, KAREN YARBROUGH, LAUREN RAYMOND, ESQ., and COOK COUNTY (collectively "Defendants").

## NATURE OF THE ACTION

1. Plaintiff brings this action for violations of her civil rights, which occurred after she lodged complaints against her supervisor and complained of questionable payroll practices. Plaintiff was retaliated against by being subjected to phony write-ups, unnecessarily interfering with her supervisory duties, stripping her of her supervisory rights, excluding her from department meetings, forcing her to justify why she should be supervising staff, arbitrarily being forced to go to EAP, and ultimately being fired for pre-textual reasons.

1

## PARTIES, JURISDICTION, AND VENUE

2.  Plaintiff, Yolanda McDonald ("McDonald") is an African American female who is 50 years old and was formerly employed as the Director of Human Resources with the Cook County Clerk's Office. At all times relevant, McDonald was a resident of Cook County, Illinois.

3.  Defendant Karen Yarbrough ("Yarbrough") is a final policymaker and serves as the chief executive officer (Clerk) of the Cook County Clerk's Office. Yarbrough engaged in the conduct complained of while acting under the color of law. She is sued individually.

4.  Defendant Lauren Raymond, ESQ. ("Raymond") is sued individually. At all times relevant herein unless otherwise stated, Defendant Raymond was the Chief of Human Resources for the Cook County Clerk's Office. She engaged in the conduct complained of while acting under the color of law and is sued in her individual capacity.

5.  Yarbrough and Raymond are collectively referred to herein as the "Individual Defendants."

6.  Defendant Cook County ("County") is and was at all relevant times a municipal corporation organized and existing under the laws of the State of Illinois. At all relevant times, Cook County administered itself through various departments and offices, including the Cook County Clerk's Office ("Clerk's Office").

7.  Jurisdiction of this Court arises under 28 U.S.C. §§ 1331, 1337 and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.*, as amended ("ADEA"), 42 U.S.C. §§ 1983, and 1988. *See Levin v. Madigan*, 692 F.3d 607 (2012) (holding that Section 1983 claims are not preempted by the ADEA).

8.  Supplemental jurisdiction exists over the state law claims of IHRA and the Illinois Whistleblower's Act pursuant to 28 U.S.C. § 1367 because the state law counts are so related to the other claims in this action to form part of the same case or controversy.

9. Venue is proper under 28 U.S.C. § 1391 because the events and omissions giving rise to the claims herein have occurred in this judicial district, and because Defendants maintain places of operation within this judicial district.

## EXHAUSTION OF ADMINISTRATIVE RELIEF

10. McDonald filed charges with the Illinois Department of Human Rights ("IDHR") against Defendant Cook County Clerk's Office (Charge No. 2021-CA-1505), which was cross-filed with the Equal Employment Opportunity Commission ("EEOC")(Charge No. 21 BA 10730).

11. IDHR sent McDonald her right to sue letter on January 25, 2022.

12. Plaintiff is awaiting correspondence on the status of the cross-filed EEOC charge and requests that this Court stay Counts II and III.

13. In her charges, McDonald asserts that she was discriminated against and retaliated against because she engaged in certain protected activity. (Copy of the cross-filed IDHR/EEOC Right to Sue letter attached hereto as Exhibit 1).

## FACTUAL ALLEGATIONS

14. Plaintiff is a highly qualified individual with a background in human resources.

15. She began working as the Human Resources Director for the Cook County Recorder's Office on May 1, 2017.

16. Plaintiff began working as the Director of Human Resources in the Clerk's Office on December 27, 2019.[1]

17. The Clerk's Office provides government services in Cook County and also serves as the election authority for suburban Cook County, maintains real estate records as the County Clerk, maintains the County's Vital Records, calculates the tax rates to be used in the

---

[1] The Recorder of Deeds Office and Cook County Clerk's Office merged in December of 2020. McDonald reapplied for the human resources position in 2019.

County's property tax bills, administers tax sales, and serves as the County Board of Commissioner.

### The Toxic Culture at the Clerk's Office

18. Plaintiff reported to Lauren Raymond, ESQ. ("Raymond"), the Chief of Human Resources Department at the Cook County Clerk's Office.

19. Throughout March 2020 until she was terminated in December 2021, McDonald raised several payroll issues to Raymond who had "banned" McDonald from the payroll process.

20. Some of the payroll issues that McDonald raised concerns about include:

   a. Employees who were not receiving paychecks;

   b. Over 100 terminated, separated, or deceased employees were still listed on the Clerk's payroll;

   c. Employees that were on unpaid leaves or were collecting short-term disability pensions were still receiving paychecks;

   d. Temporary election workers were not receiving their paychecks or were only receiving partial paychecks;

   e. Some employees were not receiving their annual wage increases and cost of living ("COLA") increases because of a purported "wage freeze;" and

   f. Employees who had resigned were being paid personal days upon separation.

21. Despite being shut out from the payroll process, McDonald continued to receive inquiries from employees about payroll problems including improper overtime calculations and requests for paid time off, and not receiving their annual raises or cost of living increases.

22. McDonald was not able to investigate these matters because she did not have full access to the payroll system, so she raised these problems with Raymond.

**23.** The ongoing payroll issues caused tensions between Raymond and McDonald.

**24.** McDonald was the oldest employee in the human resources department and was 50 years old at the time of termination.

**25.** Raymond, by contrast, was only 39 years old.

**26.** Raymond would often make ageist remarks including that she has not had good working relationships with subordinates that are older than her.

**27.** Raymond provided McDonald with an example where she had a good working relationship with one of her subordinates who was older than her until Raymond became her supervisor because the subordinate supposedly did not like answering to a supervisor who was younger than her. The woman was involuntarily transferred or terminated.

**28.** McDonald also experienced various difficulties in working under Raymond including:

  **a.** Refusing to adjust McDonald's pay grade from Grade 21 to Grade 23, which led to a pay disparity;

  **b.** Repeatedly criticizing McDonald's work performance, while interfering with her job duties and preventing her from performing her supervisory duties as a director;

  **c.** Refusing to act on a report McDonald submitted about improperly changed time cards and attendance policy violations;

  **d.** Excluding her from trainings, meetings, and discussions about payroll discrepancies;

  **e.** Writing her up for working from home even though she had previously allowed McDonald to work from home following Covid-exposure;

  **f.** Not providing her with a formal performance review as required by the handbook;

  **g.** Admonishing her for contacting the legal department before "clearing" it with her;

h. Giving her erroneous write-ups and suspensions and being forced to go for a Mandatory EAP with no grounds to do so; and

i. Not being allowed to choose her medical provider when she was arbitrarily referred to EAP.

29. On various dates, Plaintiff was subjected to disparaging comments made by Raymond including that she did not want to "get caught with her panties down" or telling McDonald that she acts like "[her] girlfriend that she could never make happy."

30. McDonald attempted to meet with Raymond several times to address these issues, but Raymond discounted and dismissed Plaintiff's concerns.

31. Raymond's conduct unreasonably interfered with McDonald's authority to manage, supervise, and discipline her subordinates and caused a hostile environment for McDonald.

**Covid Outbreaks at the Clerk's Office**

32. Due to the Covid-19 Pandemic, the Human Resources staff was on a hybrid schedule where its employees worked from home or worked from the Clerk's office depending on the day.

33. On or about August 9, 2020, the Clerk's Office had one of many Covid-19 outbreaks.

34. The next day, on August 10, 2020, McDonald was to report to the Clerk's Office for work.

35. As such, McDonald reported for work when about one hour into her shift, a temporary election employee knocked on her door and told her to leave the building because the Clerk's Office was shut down due to a CoVid-19 outbreak.

36. Raymond never informed McDonald that the Clerk's Office was shut down even though she informed other employees not to come into work and even though she knew McDonald suffered from asthma, a condition that could make catching CoVid-19 more dangerous.

**Mounting Harassment by Raymond**

6

37. McDonald asked Raymond why she never called her and stated that this was a preventable situation as she was now potentially exposed to CoVid-19.

38. Raymond responded by calling McDonald, yelling at her, and ultimately hanging up on her.

39. McDonald was deeply distressed and reported this conversation to Yarbrough.

40. On August 12, 2020, McDonald was called into a meeting with the Deputy Clerk, Cedric Giles, after Yarbrough discovered that McDonald was trying to quit due to Raymond's ongoing harassment.

41. Giles instructed Raymond to apologize for her harassing behavior and asked McDonald not to quit.

42. On or about August 12, 2020, Yarbrough called McDonald after work hours to reiterate the discussion at the Giles' meeting, that Raymond's behavior was unacceptable, and that McDonald would be able to take on supervisory duties.

43. Raymond ultimately apologized to her for being unprofessional, yelling at her, and hanging up the phone on her.

### McDonald is Finally Granted Access to the Payroll System in August 2020

44. August 13, 2020, McDonald received an invite for a meeting entitled "Departmental Changes" from Raymond's email address.

45. Finally, on or about August 13, 2020, Raymond gave McDonald authority to do payroll and she began auditing and monitoring employee time and attendance as part of her duties.

46. McDonald reviewed the time card history for two of her subordinates, Jamerson and Twine, and discovered several payroll discrepancies including inappropriate punches for Twine, also that Twine's supervisor was listed as a temporary election worker, and that Jamerson was

overstepping her boundaries by editing Twine's time card to add the missed punches when she arrived late.

47. On August 25, 2020, the comptroller's office emailed McDonald to confirm whether several employees at the Clerk's office were overpaid.

48. McDonald notified Raymond about these payroll discrepancies, and on belief, Raymond did not investigate these issues.

49. Instead, Raymond responded by accusing McDonald of "attempting to sabotage her" by making her look bad for exposing the payroll problems.

50. Even though McDonald was supposed to be in a supervisory position, Raymond never informed McDonald's subordinates that they were supposed to report to McDonald.

51. On August 16, 2020, McDonald was forced to justify her "vision" for the human resources department and why the human resources staff should report to her even though she was in a director position.

52. No other director had to justify his or her "vision" for their respective department nor did they have to explain why they should have employees report to them.

53. McDonald, again, emailed Yarbrough to inform her about the violative payroll conduct and Raymond's hostile behavior.

### Election Department's Payroll Issues

54. On or about September 23, 2020, Shana Porter, manager of the election department, emailed Twine and asked her what her plan was to handle the election staff's "short checks."

55. Twine's reply email inadvertently included McDonald as Raymond deliberately excluded McDonald from the election staff's missing or short paychecks.

**56.** When McDonald tried to investigate this issue both Twine and Jamerson refused to give McDonald the information that she needed to investigate the matter.

**57.** When McDonald approached Raymond about this issue, she threatened to write McDonald up for "insubordination."

**58.** Giles made it clear that he supported Raymond and told McDonald that "[she] had no right to question Raymond."

**59.** On October 8, 2020, McDonald requested the status of the payroll errors from several members of the Clerk's technology department.

**60.** McDonald continued to have meetings with the Clerk's technology department to rectify the ongoing payroll issues until the date of her termination.

### McDonald's Investigates Twine's Continued Timecard Inconsistencies

**61.** On or about October 19, 2020, McDonald reviewed Twine's timecard and, again, discovered it was replete with incomplete punches.

**62.** McDonald informed Raymond that Twine was repeatedly tardy, did not punch out for her lunch break, and was improperly editing her timecards.

**63.** McDonald directed Twine to explain the punch card inconsistencies and provide her compensatory reports, but Twine refused.

**64.** According to the Cook County Handbook, Twine should have been disciplined for excessive tardies (CC Handbook § 3 Time and Attendance).

**65.** Raymond dismissed McDonald's concern and did not allow McDonald to discipline Twine for violating the Clerk's Office's time and attendance policy or changing her timecard.

### Another Covid-19 Outbreak

**66.** On October 26, 2020, the Clerk's Office had another Covid-19 outbreak and McDonald discovered that she was exposed.

**67.** On October 28, 2020, Raymond emailed McDonald and informed her that she was eligible to work from home.

From: Lauren Raymond (County Clerk) <Lauren.Raymond@cookcountyil.gov>
Sent: Wednesday, October 28, 2020 12:40 PM
To: Yolanda McDonald (County Clerk) <Yolanda.Mcdonald@cookcountyil.gov>
Subject: RE: Just to be clear

Only you and Kelly are eligible to work from home.  Kelly does not play a role in payroll.

Kind Regards,

1

**68.** McDonald requested to work from home on October 29th and 30th because she had not yet received the results of her CoVid-19 test.

**69.** Raymond accused her of putting unnecessary pressure on the human resources department but ultimately approved her work from home request.

**Comptroller's Investigation of Payroll Errors**

**70.** On October 30, 2020, McDonald emailed Raymond, Yarbrough, Jamica Davis, and Giles about the prior inquiry from the Comptroller's office regarding the perceived overpayments and requested instruction from them on how to proceed.

**71.** When no one responded, McDonald emailed the Comptroller's Office with documentation that at least $17,260.00 was overpaid to six employees before she took over the payroll.

**McDonald's First Sham Write-Up**

**72.** Raymond became irate because McDonald had violated Raymond's unofficial policy of "what happens in HR stays in HR."

**73.** On or about October 27, 2020, McDonald called and emailed Yarbrough and requested a meeting based on Raymond's continued harassment and ongoing payroll issues.

**74.** On belief, Davis made Yarbrough aware of these issues.

10

75. On October 30, 2020, Raymond issued McDonald her first write-up, but it was backdated to October 28, 2020.

76. The write-up was a sham. Raymond was attempting to thwart McDonald's protected activity by claiming that it was "unacceptable for [McDonald] to work from home during a payroll processing week for the entire week" even though she had approved McDonald's ability to work from home only two days before and also the Clerk's CoVid-19 exposure guidelines mandated that McDonald work from home after being exposed to CoVid-19.

77. Later that day, McDonald emailed Davis and Giles to report feeling "ganged up" on by Raymond and her subordinates for putting rules in place for HR staff timecards, for being shut out from the current payroll process, for the errors with the current payroll process, and now being written up.

78. On October 30, 2020, McDonald also met with Scott Kozlov, who serves as the Defendant Clerk's Chief Ethics Officer and Legal Counsel, to discuss the ongoing harassment and ongoing payroll issues.

79. Kozlov directed McDonald to contact the legal department.

80. On October 30, 2020, the Director of Human Rights and Ethics, Sisavanh Baker, emailed McDonald that she was concerned about the issues McDonald had reported about Raymond.

81. McDonald's pre-investigation hearing was on November 2, 2020.

82. Kozlov issued McDonald a one-day suspension finding that Cook County's definition of gross insubordination was not clear and that there is little evidence to demonstrate that McDonald failed to act with reasonable competence or efficiency on any of the tasks mentioned in the write-up.

83. On November 2, 2020, Baker emailed McDonald, Kozlov, and Giles to provide them with a status on McDonald's complaint against Raymond.

> **From:** Sisavanh Baker (County Clerk)
> **Sent:** Monday, November 2, 2020 9:26 AM
> **To:** Yolanda McDonald (County Clerk)
> **Cc:** Scott Kozlov (County Clerk); Cedric Giles (County Clerk)
> **Subject:** Re: hostile work environment
>
> Yolanda,
>
> I hope you are feeling better.
>
> Please be aware that I have spoken to Lauren about your complaint. I did not get into the factual details of the harassment. My goal was to let her know that she should cease any kind of harassing behavior. She has indicated that she does not want you to feel harassed in any way and that she will continue to communicate with you via email and text. I found her response to very authentic.
>
> If you have not already done so, please expedite your complaint to Scott so we can bring this situation to a conclusion. I am very concerned about the Office's ability to operate HR in a professional and efficient manner under the circumstances. I understand the pressures that HR is under right now given the Election tomorrow, the Assumption on December 1, and the pandemic but I hope that we can move forward in the best interest of the hardworking public.
>
> Please feel free to contact me with further questions or concerns.
>
> Sisavanh

84. On November 6, 2020, Raymond never informed McDonald about a basic training course on the payroll that the other employees of the department had participated in.

### McDonald's Second Sham Write-up

85. On November 10, 2020, Raymond issued McDonald a second write-up for allegedly not taking her phone calls and supposedly hanging up on Raymond during the October 27, 2020 phone call.

86. This write-up was also backdated to October 30, 2020.

87. Worse still, the second write-up was based on the same set of facts as the first write-up. So, McDonald was being punished twice for the same purported behavior.

88. Indeed, Raymond could have, but did not, email McDonald's county-issued email address requesting a callback.

89. Raymond also included several pieces of irrelevant and biased language in the write-up that, were not true, and there was no reason whatsoever to include such statements in the disciplinary writeups except to pave the way for her termination.

90. Defendants discriminated against Plaintiff's age and retaliated against her for engaging in the aforementioned protected conduct by creating trumped-up, ginned up charges to justify firing her which consisted of not complying with a "disciplinary order" that was issued to her only 12 days before with little to no instruction.

91. Plaintiff avers that, after a reasonable opportunity for discovery, Raymond sought to rid her from the Human Resource department because of her age as evidenced by Raymond's comments about not being able to work with subordinates older than her.

92. After a reasonable opportunity for discovery, it will be shown that Raymond engaged in a pattern of targeting older staff with harassing and cajoling managerial tactics or nonsense disciplinary complaints to force them out and replace them with younger staff.

93. On November 11, 2020, McDonald called EAP to seek counseling on how to handle the pretextual write-ups and increasing tensions with Raymond.

**Complaints to Defendant about Discrimination/Harassment and Retaliation by Defendant**

94. On November 17, 2020, McDonald informed Koslov, Giles, and Baker that Raymond was creating a hostile work environment.

95. Upon receipt of the complaint, the aforementioned individuals had a duty to make any further inquiries into the facts supporting McDonald's claims of harassment and discrimination and to properly investigate such claims per Cook County's Employment Manual.

96. Each of the two negative evaluations provided to Plaintiff was false, distorted, or misleading.

13

**97.** On belief, each of them did little or nothing to investigate this complaint or correct the discrimination and harassment by Raymond.

### Cook County's Arbitrary EAP Referral

**98.** Cook County provides an Employee Assistance Program ("EAP") to all county employees.

**99.** On belief, managers have three types of EAP referrals available: educational, informal, or mandatory (formal) referrals.

    **a.** Informal Referrals mean that an employee's participation is voluntary and that feedback will not be provided to Cook County's contact.

    **b.** Formal Referral means that an employee's participation is strongly suggested, but their employment is not dependent on contacting the EAP. Magellan provides one-time feedback to Cook County's contact.

    **c.** Mandatory Referral means that an employee's continued employment is contingent upon contacting the EAP. Magellan provides continual feedback to Cook County's contact regarding the employee's compliance with provider recommendations, and up to three (3) face-to-face sessions are available.



100.    According to the Cook County WorkPlace Support HR Overview, "Mandatory Referrals to EAP" occur when an "[e]mployee has been determined to have a substance use disorder problem it is also used for a [sic] employee who comes forward to admit a substance abuse disorder or a mental health problem."

101.    The purpose of the EAP training was to educate the directors and supervisors on the ways to use EAP Program effectively and to prevent it from being used to discriminate, punish, or retaliate against employees.

102.    The EAP Policy is not a "disciplinary measure," much less the extreme, drastic penalty of termination, as it implicates employees' rights to seek help for an impairment disability.

103.    The employee referred to mandatory EAP also has a choice to find their provider or go through Magellan as the provider selected by Cook County for its employees.

104.    On December 3, 2020, Kozlov referred McDonald to mandatory EAP but never informed her of the basis for the referral.

105.    Kozlov only directed McDonald to sign up and register within seven (7) days and sign the applicable consent and tender by December 11, 2020, by 4:30 pm.

106.    McDonald informed Kozlov that she completed the tasks.

107.    At no time did McDonald display or admit to any substance abuse or mental impairment.

108.    At no time did anyone from the Defendant Clerk's Office explain the EAP Process or reason for the mandatory referral to McDonald. McDonald was also not given the option to choose her provider.

109.    On or about December 14, 2020, McDonald emailed the legal department to verify the purported wage freeze.

110.    James Gleffe, labor counsel for the Cook County Clerk, forwarded McDonald's email to Raymond who then forwarded it to McDonald with an angry message.

111.    Approximately 30 minutes later, Raymond emailed McDonald to "coordinate with [her] before [she] send answers to anything of a legal nature."

112.    McDonald then informed Gleffe that Raymond had forwarded his email to her and that she feared for her job because she reported yet another payroll issue to Raymond's supervisor.

## Defendants Unlawfully Terminate McDonald

113.    The next day, on December 15, 2020, Defendant Clerk, through Cedric Giles, terminated McDonald.



114.    McDonald is familiar with how to properly refer an employer to EAP since she was the designated Cook County Contact for the Recorder of Deeds Office as shown above.

115.    Defendant Cook County also required McDonald to take an EAP training session to learn how to properly apply the Program county-wide to its employees.

116.    On further belief, Scott Koslov never was trained in the EAP procedures and policies.

117.    McDonald called Magellan and reviewed Kozlov's directives with her and Magellan admitted they did not know what "registration" Kozlov was referring to.

118.    Magellan did not report McDonald as non-compliant.

119.    Defendants also failed to adhere to Cook County's progressive discipline standard by not taking certain corrective, disciplinary steps before terminating McDonald and firing her without giving her a pre-termination hearing.

120. Even if Plaintiff had committed the infractions listed as alleged in the termination letter Defendants had a long-standing policy that excused similar employees' behavior or much worse behavior.

**Yarbrough's Knowledge, Counselling, and Involvement in McDonald's Employment**

121. Yarbrough knew about McDonald improper termination and facilitated it, approved it, condoned it, or turned a blind eye toward it.

122. On December 24, 2020, McDonald emailed Yarbrough with a request for reinstatement.

123. Later in December 2020, Yarbrough instructed one of her employees to tell McDonald that if she wanted her job back, she had to file a claim with the Illinois Department of Human Rights Commission.

124. On or about May 12, 2021, Yarbrough invited McDonald over to her private home to discuss how McDonald could be reinstated.

125. Casting additional doubt onto the veracity of the stated reason for termination, Yarbrough admitted that McDonald's termination was wrong and apologized for how she was treated but stated that it would be "political suicide" for her to rehire McDonald without the façade of the IDHR claim looking as if she was legally mandated to rehire McDonald.

126. Yarbrough admitted that she directed Davis to keep tabs on McDonald's IDHR charges.

127. On May 17, 2021, McDonald emailed Yarbrough to update her about the IDHR claim.

128. Yarbrough responded to McDonald from both her personal and work emails as follows:

> On May 19, 2021, at 1:01 PM, Karen Yarbrough (County Clerk) <Karen.Yarbrough@cookcountyil.gov> wrote:
> I am advised that we are in receipt of the charge from Human Rights.
> Best,
> Karen A. Yarbrough
> Cook County Clerk
> Accuracy-Efficiency-Advocacy-Cyber Security

On May 20, 2021, at 12:20 PM, Karen Yarbrough <kayarbro@gmail.com> wrote:

Thanks for the update!

 Best,
- Karen A Yarbrough
 Cook County Clerk
Accuracy-Advocacy-Efficiency-Cybersecurity

129.     Later in summer 2021, Yarbrough invited McDonald to her "Summer Soiree" as the

Clerk's "special guest."

130.     Despite Yarbrough's promises to McDonald, she was never reinstated to her position.

**Yarbrough's History of Using Jobs as Leverage for Politics or Retaliation**

131.     Defendant Yarbrough has engaged in a policy, pattern, and practice of retaliating and

condoning retaliation against employees or citizens who complain of protected class

discrimination or report such misconduct.

132.     For example, the Court declined to dismiss the case in *Soto v. Yarbrough* where Soto

(former director of Human Resources at the Recorder's office) alleged that they

discriminated and retaliated against her based on her political affiliation.

133.     Giles and Raymond did not want McDonald rehired with the Clerk's Office.

134.     Similarly, and on belief, Yarbrough did not want to go against political donors like Giles,

Raymond, and Gleffe each of whom have donated thousands of dollars to Yarbrough's

campaign.

135.     On further belief, Defendants viewed each of Plaintiff's aforementioned protected

activities as separate acts of defiance against Yarbrough.

**COUNT I — 42 U.S.C. §1983 – FIRST AMENDMENT RETALIATION**
(Plaintiff v. All Defendants)

136.     Plaintiff realleges and incorporates by reference the prior paragraphs of this Complaint as

if those paragraphs were fully set forth herein.

137.   At all times relevant hereto, Defendants Cook County, Cook County Clerk's Office, Yarbrough, and Raymond acted or have acted as an employer, supervisor, or a final policymaker and at all times acted under color of law.

138.   Defendant Clerk's Office created a policy, practice, custom and took express acts that had the force and effect of official County policy to retaliate against McDonald when she engaged in protected activities when: (a) McDonald complained that the actions of Raymond created a hostile work environment because of her age and in retaliation for reporting payroll irregularities to the OIG, Comptroller, and the legal department after her second write-up.

139.   Defendants retaliated against McDonald in violation of her First Amendment rights when she was written up and ultimately fired after she reported what she believed to be improper actions by her supervisor and the management of payroll to the legal department, comptroller's office, and OIG. The Seventh Circuit has repeatedly held that "speech alleging government corruption and malfeasance is of public concern in its substance." *Spiegla v. Hull*, 371 F.3d 928, 937 (7th Cir. 2004) (collecting cases).

140.   By Defendants' actions, Plaintiff suffered compensable injury and harm as a result of the denial of rights guaranteed to her under the First Amendment.

141.   Defendants, by its officials, agents, and employees, took adverse actions against Plaintiff that "might well" dissuade a reasonable worker from making or supporting a charge of harassment or retaliation.

142.   At all times, Defendant, by its officials, agents, and employees, was aware of each Plaintiff's protected activities and oppositional conduct based on the foregoing allegations.

143.   The aforementioned acts of the Defendants were reckless, willful, wanton, malicious, oppressive, and in callous disregard and indifference to Plaintiff.

144.    The aforementioned conduct of Defendants has resulted in damages to Plaintiff, including but not limited to loss of pay, loss of benefits, emotional anguish, loss of job advancement, pain and suffering, humiliation, and embarrassment.

WHEREFORE, Plaintiff prays for judgment against Defendants in the form of (a) a finding that Defendant has injured Plaintiff in violation of 42 U.S.C. § 1983; (b) All wages and benefits plaintiff would have received but for the First Amendment violations, including but not limited to back pay, front pay, pre-judgment interest, and reinstatement into his position; (c) Compensatory damages in an amount to be determined at trial to compensate Plaintiff for the humiliation, anguish, and emotional distress caused by defendants' conduct; (d) A permanent injunction enjoining defendants from engaging in the practices complained of herein; (e) A permanent injunction requiring that defendants adopt employment practices and policies in accord with and in conformity to the requirements of 42 U.S.C. § 1983; and (f) A declaratory judgment that Defendants' actions violate 42 U.S.C. § 1983.

## COUNT II – TITLE VII VIOLATION, 42 U.S.C. § 2000e(3)(a) BASED ON AGE
(Plaintiff v. Cook County)

145.    Plaintiff realleges and incorporates by reference the prior paragraphs of this Complaint as if those paragraphs were fully set forth herein.

146.    Defendant Cook County Clerk is the duly elected position in Cook County, Illinois and at all times relevant has employed 20 or more employees within Illinois during 20 or more calendar weeks within the current and preceding relevant calendar years, and, therefore, is an employer within the meaning of ADEA.

147.    At the time of her termination, McDonald was 50 years old.

148.    At all times relevant, McDonald has been an employee within the meaning of the ADEA.

149.     The Defendants made trivial allegations of misconduct, and Raymond orchestrated Plaintiff's termination on December 15, 2020.

150.     At all times, Raymond was motivated by discriminatory animus based on Plaintiff's age.

151.     Plaintiff reported the behavior to Defendant Clerk's office which failed to investigate Plaintiff's complaints, much less do so thoroughly and promptly.

152.     Raymond's age discriminatory animus is evidenced by the proximity in time between her age-based cajoling of Plaintiff in August 2020.

153.     McDonald's replacement is at least five (5) to 10 years younger than her.

154.     Baker, Raymond, Kozlov, Giles, and Yarbrough constituted bona fide supervisors of McDonald because they were at all times empowered to take tangible employment actions against Plaintiff, at least she had the authority to discipline, fire, and reassign employment responsibilities.

155.     Plaintiff is a member of a protected class because she is over 50 years old and engaged in protected activity.

156.     At no time did Defendant have a legitimate, non-discriminatory reason for terminating McDonald, and relied on her age in so doing.

157.     As a direct and proximate result of Raymond's age-based discriminatory conduct, McDonald was demeaned, harassed, written up for pretextual reasons, arbitrarily referred to EAP, and ultimately terminated.

158.     Because of Raymond's conduct, McDonald has suffered damages, including job loss, loss of pay and benefits, compensatory losses in the form of emotional distress, outrage, shame, humiliation, embarrassment, mental anguish, and pain and suffering.

WHEREFORE, Plaintiff, YOLANDA MCDONALD, respectfully requests that this Court enter judgment in their favor and against Defendant, and order Defendant to pay to Plaintiff all benefits that she would have received but for the Defendant's discrimination, including pre-judgment interest, lost pay, compensatory damages in an amount to be determined at trial, a permanent injunction enjoining Defendants from engaging in the discriminatory practices complained of herein, that this Court retains jurisdiction of this case until it is assured that Defendant has remedied the policies and practices complained of herein and is determined to be in full compliance with the law, damages for actual emotional distress caused by the Defendant's actions and omissions, an award of reasonable attorneys' fees, costs, and litigation expenses as allowed by law; and, such other relief as this Court may deem just or equitable.

## COUNT III – TITLE VII VIOLATION, 42 U.S.C. § 2000e(3)(a) - RETALIATION
### (Plaintiff v. Cook County)

159.    Plaintiff realleges and incorporates by reference the prior paragraphs of this Complaint as if those paragraphs were fully set forth herein.

160.    McDonald has been an employee within the meaning of Title VII and Defendant has been an Employer within the meaning of Title VII in that it has been in an industry affecting commerce employing fifteen or more employees for each working day for each of twenty or more calendar weeks in the year before this Complaint was filed.

161.    At all times relevant, McDonald engaged in conduct protected by Title VII, including, but not limited to, questioning payroll discrepancies, complaining about age discrimination and harassment, and participating in investigations and audits relating to payroll problems.

162.    McDonald has suffered a severe and a pervasive hostile work environment by the actions stated in the other paragraphs of this Complaint, including being written up twice based on

trumped-up, false, and selectively targeted allegations, being arbitrarily referred to EAP, and failing to meaningfully investigate her allegations about questionable payroll practices.

163.    As a direct and proximate result of Defendants' unlawful actions, McDonald has suffered economic and non-economic damages, including lost pay, benefits, promotional opportunities, reputational damage, emotional distress, and general compensatory damages, all because of Defendant Cook County's unlawful actions.

WHEREFORE, for the foregoing reasons, McDonald requests that this Court enter judgment in his favor and against Defendant Cook County, Illinois in an amount to be proved at trial, including for lost pay and benefits, compensatory damages up to and including $300,000, for emotional distress and reputation harms, and order Cook County to reinstate McDonald to her position and benefits with full make-whole relief, and for all such other relief to which she is entitled and the Court deems just and proper.

### COUNT IV – IHRA CIVIL RIGHTS VIOLATION (AGE AND RETALIATION)
(Plaintiff v. Cook County)

164.    Plaintiff realleges and incorporates by reference the prior paragraphs of this Complaint as if those paragraphs were fully set forth herein.

165.    IHRA makes it a civil rights violation for any employer to discharge or discipline any employee based on unlawful discrimination, including age. *See* 775 ILCS 5/2-102(A).

166.    Plaintiff was employed as a Director of Human Resources with the Clerk's Office and, therefore, was an employee of Defendant Clerk's Office within the meaning of IHRA.

167.    Defendant Yarbrough is an employee under IHRA because she is the elected Cook County Clerk of Cook County and has employed 15 or more employees within Illinois during 20 or more calendar weeks within the current and preceding relevant calendar years

168.    At all times, Raymond was motivated by discriminatory animus based on Plaintiff's age.

24

169.    Raymond's age discriminatory animus is evidenced by the proximity in time between her

age-based cajoling of Plaintiff and issuing her phony write-ups, referral to EAP, and

ultimately her termination.

170.    At no time did the Clerk's Office have a legitimate, non-discriminatory reason for

terminating McDonald, and it did not rely on a reasonable, lawful factor in so doing.

171.    As a result of Defendant Cook County's conduct, via its employees, McDonald has

suffered damages including job loss, loss of pay and benefits, compensatory losses in the

form of emotional distress, outrage, shame, humiliation, embarrassment, mental anguish, and

pain and suffering.

WHEREFORE, for the foregoing reasons, Plaintiff requests that this Court enter judgment in her

favor, and against Defendant Clerk, and enter and order all appropriate relief, to include back pay

and back benefits as allowed by law, compensatory damages in an amount up to and including

$1.5 million, make whole relief for all losses resulting from the unlawful discrimination,

injunctive relief requiring Defendants to cease and desist from violating the age discrimination

provisions of the IHRA, reasonable attorneys' fees and litigation costs, pre-judgment interest,

and all other available and appropriate relief.

## COUNT V – VIOLATION OF THE WHISTLEBLOWER ACT (740 ILCS § 174/1)
### (Plaintiff v. All Defendants)

172.    Plaintiff realleges and incorporates by reference the prior paragraphs of this Complaint as

if those paragraphs were fully set forth herein.

173.    Plaintiff complained to Defendant Raymond, Yarbrough, and various employees in the

Clerk's Office including the legal department and comptroller's department about the

ongoing payroll problems and Raymond's unlawful harassment. *See 740 ILCS 174/15(b).*

174.    When Defendants subjected Plaintiff to the various materially adverse employment actions, they were aware that she had reported this misconduct. *See Spalding v. City of Chicago*, 186 F. Supp. 3d 884, 918 (N.D. Ill. 2016).

175.    After Plaintiff complained, she alleges that Defendants retaliated against her by the actions as described herein, including harassing and demeaning her, stripping away her supervisory duties, subjecting her to trumped-up write-ups, arbitrarily referring her to a mandatory EAP, and ultimately terminating her, which all constitute materially adverse employment actions that altered the terms and conditions of his employment.

176.    McDonald had reasonable cause to believe that the information disclosed was a violation of state or federal law, rule, or regulation.

177.    Defendants were prohibited from retaliating against Plaintiff for reporting clear mandates of public policy, such as enforcing state and federal civil rights statutes and laws and the policy of furthering the investigation of a hostile work environment.

178.    Each Defendant made, took part in, assisted in, and/or participated in the decision to retaliate against Plaintiff.

179.    McDonald was subjected to retaliation in violation of rights guaranteed to her by the Illinois Whistleblower Act and she has suffered substantial losses as a result, including lost wages and benefits, mental and emotional anguish, and embarrassment and humiliation.

WHEREFORE, for the foregoing reasons, Plaintiff, Yolanda McDonald, requests that this Court enter judgment in her favor and against Defendants in an amount to be proved at trial, including (a) reinstatement with the same seniority status that Plaintiff would have had, but for the termination; (b) back pay, with interest; and (c) compensation for any damages, including litigation costs and reasonable attorney's fees." *740 ILCS 174/30*.

## COUNT VI – INDEMNIFICATION
(Plaintiff v. Cook County)

180. Plaintiff realleges and incorporates by reference the prior paragraphs of this Complaint as if those paragraphs were fully set forth herein.

181. Defendant Cook County is obligated to assume financial responsibility for the actions committed by its officials or employees.

WHEREFORE, for the foregoing reasons, Plaintiff, requests that this Court enter judgment in her favor, and against Defendant Cook County and that this Court enter an order requiring Defendant County to indemnify any other defendants in this matter.

## COMMON PRAYER FOR RELIEF

WHEREFORE, and that there is sought, Plaintiff, prays that this Honorable Court:

a) Conduct a mediated settlement conference or refer the case to its court-annexed mediation program to assist the parties to bring about a settlement of this case;

b) Grant court costs and reasonable attorneys' fees; and

c) Grant such additional relief as the Court deems just and proper under the circumstances.

### JURY DEMANDED ON ALL COUNTS

Respectfully Submitted,
Yolanda McDonald

By:_____
Plaintiff's Attorney

Dated: April 25, 2022

Gianna Scatchell, Esq.
DISPARTI LAW GROUP, P.A.
121 W. Wacker Drive, Suite 2300
Chicago, Illinois 60601
P: (312) 506-5511 ext. 330
F: (312) 846-6363
E: gia@dispartilaw.com