IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Yolanda McDonald ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 22-cv-02143 |
| ) | |
| KAREN YARBROUGH, et al. ) | Hon. John J. Tharp |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' PARTIAL RULE 12(b)(6) MOTION TO DISMISS**

Plaintiff Yolanda McDonald, through her undersigned counsel, respectfully submits this Response to Defendants Rule 12(b)(6) Motion to Dismiss (Dkt. 10). For the reasons stated herein, Defendants' motion should be denied in its entirety.

**INTRODUCTION AND BACKGROUND**

Plaintiff, Yolanda McDonald filed this Motion against Defendants, Karen Yarbrough,[1] Lauren Raymond, and Cook County (indemnitor). Plaintiff has stated, with proper detail, several instances in which Defendants violated multiple federal and Illinois statutes by harassing, discriminating against without proper justification after she made multiple complaints about illegal payroll practices, timecard fraud, among other unlawful activities.

McDonald began working as the Director of Human Resources at the Clerk's office on in 2019. (Compl. ¶ 16). At that time, Karen Yarbrough was elected as the Cook County Clerk. (*Id.* ¶ 3). McDonald reported to Lauren Raymond, the Chief of the Human Resources at the Clerk's office. (¶ 18). McDonald experienced various difficulties working with Raymond, for example, Raymond refused to act on reports of timekeeping discrepancies, attendance policy violations by

---

[1] McDonald inadvertently stated that this case was filed against Yarbrough in her individual capacity, but the factual pleadings and counts provide ample proof that establish Yarbrough's liability in both her individual and official capacities and requests leave to replead her Complaint to clarify this point.

1

an employee. (¶¶23, 28, 31). McDonald raised issues regarding the payroll from March 2020 until she was terminated in December 2021. (¶ 20). McDonald also asserts that Raymond deliberately shut her out of the payroll system and once she provided her with access to the payroll system, then shut her out of any meetings or communications regarding payroll. (¶19-20). Payroll was not part of her job duties since she was "banned" by McDonald from working on payroll or was deliberately not included in meetings or emails discussing such discrepancies or was unable to investigate the issues with Payroll in part because she did not have full access to the payroll system. Compl. ¶¶19, 21-22, 54-56, 59-60. It was not until August 2020 that McDonald even had access to the payroll system. (¶45). McDonald began conducting an audit of the payroll and monitoring time and attendance records, which revealed several irregularities, violations of the attendance policy, and timecard fraud (¶¶45-46). On August 25, 2020, the comptroller's office requested McDonald to confirm whether several employees at the Clerk's office were being overpaid. (¶47).

  As Raymond's behavior became increasingly abusive, McDonald reported this behavior to Yarbrough. (¶39). McDonald's report to Yarbrough led to a meeting with the Deputy Clerk, Cedric Giles, who forced Raymond to apologize to McDonald. (¶¶40-41). Yarbrough followed up with McDonald after the meeting with Giles to request that she not quit. (¶42). At all times, Plaintiff met her employer's legitimate employment expectations and the write-ups she received were a sham and in retaliation for reporting the above unlawful activities. (Compl. ¶¶72-93, 99-112). James Gleffe serves as labor counsel for the Clerk's Office and improperly forwarded McDonald's email complaining about additional payroll inaccuracies to Raymond. (Compl. ¶110). Raymond was irate and sent the forwarded Email to McDonald and told her to "coordinate with her" before McDonald "answers anything of a legal nature." (Compl. ¶111).

2

McDonald Emailed Gleffe to tell him about Raymond's inappropriate emails and reiterate her fear that she was going to be fired for reporting yet another payroll issue. (Compl. ¶112). The next day, Giles fired McDonald. (Compl. ¶113). The Clerk's Office's pretext that McDonald failed to comply with the EAP recommendation was a sham as Magellan the EAP administrator never marked McDonald as non-compliant. (Compl. ¶118). The Clerk's Office disregarded its policy of progressive discipline in summarily terminating McDonald. (Compl. ¶119).

I.         LEGAL STANDARD – Fed. R. Civ. P. 12(b)(6)

All that is required is "a short and plain statement of the claim showing that the pleader is entitled to relief." *See Fed. R. Civ. P. 8(a)(2)*. The purpose of a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) is to test the sufficiency of the complaint, not to decide its merits. *See Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). On a motion to dismiss, the court accepts all well-pleaded allegations as true and draws all reasonable inferences in favor of the plaintiff. *Jackson v. E.J. Branch Corp.*, 176 F.3d 971, 977-78 (7th Cir. 1999). Plaintiff is not required to present evidence in his complaint. Hunt v. Dart, 07 C 6003, 2010 WL 300397, *4 (N.D. Ill. Jan. 22, 2010). Rather, a "well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

Employment discrimination claims must adhere to a minimal pleading standard. *See Tamayo v. Blagojevich*, 526 F.3d 1084. A complaint alleging employment discrimination "need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of" a protected characteristic. *Id.* "A complaint need not allege all, or any, of the facts logically entailed by the claim, and it certainly need not include evidence." *Id.* (internal citations and quotations omitted); *see also Bennett v. Schmidt*, 153 F.3d 516, 518 (7th

3

Cir. 1998). See, e.g., Erickson v. Pardus, 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (citing Twombly, 550 U.S. at 555) ("[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the * * * claim is and the grounds upon which it rests."); Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 168 (1993) (holding no heightened pleading standard in Section 1983 civil rights cases). In Tamayo, the Seventh Circuit reiterated: "We previously have stated, on numerous occasions, that a plaintiff alleging employment discrimination . . . may allege these claims quite generally." 526 F.3d at 1081. "A complaint need not allege all, or any, of the facts logically entailed by the claim, and it certainly need not include evidence." Id. (internal citations and quotations omitted); see also Bennett v. Schmidt, 153 F.3d 516, 518 (7th Cir. 1998).

McDonald meets this standard because the allegations simply have to put Defendants on notice of Plaintiff's claims, which Plaintiff's Complaint does here as explained below.

## ARGUMENT

### I. McDonald Adequately States a Claim for §1983 Retaliation

In Count I, McDonald alleges that Yarbrough and Raymond[2] retaliated against her in violation of her First Amendment rights when she was fired after she had reported several instances of payroll irregularities, improper employee time-keeping fraud, and even escalated the payroll irregularities to the OIG, the County's comptroller department, and aided in an audit that the comptroller's office requested. Compl. ¶¶47, 70-71, 138-139, 161). A First Amendment retaliation claim requires that a plaintiff's speech be constitutionally protected, *Gunville*, 583 F.3d at 983, and a public employee's speech is protected only if she is speaking "as a citizen on a matter of

---

[2] Plaintiff agrees with Defendant that this Count could be plead more clearly and requests that this Court grant leave to file an Amended Complaint against Yarbrough in both her official and individual capacities and Raymond in her individual capacity only.

4

public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). It is well settled that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti* at 421. "[W]hether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement." *Kubiak v. City of Chi.*, 810 F.3d 476, 482–83 (7th Cir. 2016). Specifically, "when analyzing the content of the speech, the broad subject matter is not determinative," and a court "must instead focus on the particular content of the speech." *Id.* at 483 (internal citations omitted).

### A. McDonald Properly Alleged that she Engaged in Speech as a Private Citizen on a Matter Of Public Concern

Defendants argue that McDonald's speech is not constitutionally protected because McDonald made these complaints in the course of her job duties. However, this does not accurately describe the nature of Plaintiff's complaints. Plaintiff's complaints were not based on internal workplace disputes. Rather, they involved payroll irregularities and unlawful conduct that was reported both internally and externally outside the Clerk's Office.

McDonald has sufficiently alleged that she was speaking on a matter of public concern. In particular, McDonald makes specific references to being shut out from the payroll system and meetings and correspondence related to the payroll discrepancies. In particular, McDonald did not make the complaints in question as part of her job duties because she was shut out of the payroll system until August 2020, when she finally had access to the payroll, she was shut out of meetings and communications regarding the payroll discrepancies, she had no formal responsibility to report the payroll irregularities to the legal department, the comptroller, or the OIG for Cook County--a separate and independent body that monitors political corruption."

5

When Plaintiff complained to the OIG and comptroller, she did not make these complaints as part of her job duties. An employee such as Plaintiff is not speaking pursuant to her official duties when she "reports misconduct outside established channels" or reports something for which she did not have any formal responsibilities. *Spalding v. City of Chicago*, 186 F. Supp. 3d 884, 904 (N.D. Ill. 2016); *see also Rose v. Haney*, No. 16 CV 5088, 2017 WL 1833188, at *5 (N.D. Ill. May 8, 2017). Plaintiff had no formal responsibilities to report to the OIG or comptroller—separate and independent body that monitors political corruption. *See Kristofek v. Vill. of Orland Hills*, 832 F.3d 785, 793 (7th Cir. 2016) ("[W]e must be especially careful in concluding that employees have spoken pursuant to their official duties when the speech concerns allegations of public corruption."). Further, while Plaintiff's initial complaint did involve her evaluation, courts have repeatedly observed that although "a statement born of pure personal interest does not constitute a public concern, a mere personal aspect of the speaker's motivation will not defeat the entire speech." *Miller*, 444 F.3d at 937; *cf. Marshall v. Porter Cnty. Plan Comm'n*, 32 F.3d 1215, 1219 (7th Cir. 1994) (observing that "[i]t is often the case that those who speak out are also involved in personal disputes with employers and other employees"). Thus, Plaintiff's complaints regarding discrimination made to the OIG and comptroller clearly do not fall under her regular job duties.

Plaintiff's complaint also involved matters of a public concern. The Supreme Court has defined "public concern" to mean "legitimate news interest," or "a subject of general interest and of value and concern to the public at the time of publication." *Meade v. Moraine Valley Cmty. Coll.*, 770 F.3d 680, 684 (7th Cir. 2014) (quoting City of San Diego v. Roe, 543 U.S. 77, 83-84 (2004)). "Whether an employee's speech addresses a matter of public concern must be

6

determined by the content, form, and context of a given statement[.]" *Connick v. Myers*, 461 U.S. 138, 147-48 (1983).

Plaintiff alleges Raymond and various employees at the Clerk's office segregated, belittled, and intimidated her as a result of her escalating the payroll discrepancies to the OIG and legal departments, thereby depriving Plaintiffs of their First Amendment rights to be free from retaliation, which deprived McDonald of her First Amendment rights to petition their government for redress of grievances and to speak on matters of public concern as a private citizen. McDonald states that she reported suspected misconduct to the Comptroller (which manages the finances for the entire county, not just the Clerk's office) and the OIG, which is an independent authority responsible for monitoring corruption in the Clerk's Office. (Compl. ¶¶ 47, 70-71, 138-139, 173). McDonald also complained to the Director of Human Rights and Ethics and legal department, both of which have independent fiduciary duties. (Id. at ¶¶ 79-80, 109, 138-139).

The content of Plaintiff's complaints to the OIG and comptroller—points to corruption, waste, mismanagement, and violations of state and federal laws—all clearly involved a matter of public concern. See, e.g., Miller v. Jones, 444 F.3d 929, 936 (7th Cir. 2006) ("Our cases have consistently held that speech alleging government malfeasance addresses matters of public concern in its substance."); *cf. Garcetti*, 547 U.S. at 425, 126 S.Ct. 1951. These instances are sufficient to allege that McDonald was speaking as a citizen, rather than an employee. Accordingly, Defendants' Motion to dismiss McDonald's First Amendment claim should be denied.

Defendants fail to connect the dots of why McDonald's complaints constitute official job duties when it dismisses the complaints to the comptroller and OIG, neither of which are internal departments within the Clerk's Office. Instead, both are external bodies with formal oversight responsibility, and therefore McDonald is protected by the First Amendment. Plaintiff made these

complaints outside of her job duties because she was complaining about payroll irregularities and other unlawful activities to outside agencies empowered to independently conduct investigations and issue findings and recommendations related to Cook County Officials and departments and also to detect, deter and prevent corruption, fraud, waste, mismanagement, and misconduct in the operation of Cook County government. Therefore, this Honorable Court should deny the Defendants' Motion.

Defendants' argument also fails because it fails to substantively analyze the content, context, and form of McDonald's "reporting", which from the record evidence, involves both personal and employment-related matters. Defendants also fail to substantively that Yarbrough was not personally involved in the McDonald's termination and her awareness and her instruction to McDonald to file an IDHR complaint "to get her job back" and keep her apprised of the claim's status. McDonald, by contrast, alleges specific details to establish a cause of action for Count I against Yarbrough (Compl. ¶¶ 39-40, 42, 53, 70, 73, 121-130). As such, Count I should be denied based on Defendants' failure to develop this argument.

### A. Count II Should Not be Dismissed because the Seventh Circuit Holds that Age-Based Retaliation Claims are not Preempted by Title VII

Defendants argue that Count II (age discrimination under the ADEA) fails because such a claim could proceed under Title VII. *Motion*, pp. 6-7. Congress enacted the ADEA "to promote employment of older persons based on their ability rather than age; to prohibit arbitrary age discrimination in employment; [and] to help employers and workers find ways of meeting problems arising from the impact of age on employment." 29 U.S.C. § 621(b). The ADEA makes it unlawful for an employer to "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual ... because of such individual's age." Id. § 623(a)(1). In general, the ADEA provides coverage for private, state, and federal employees who are forty years of age

8

and older, *id.* §§ 630(f), 631(a), 633a(a), albeit with a few notable exceptions, *see id.* §§ 623(j), 630(f). The Act "incorporates some features of both Title VII and the Fair Labor Standards Act of 1938 [FLSA], which has led [the Supreme Court] to describe it as 'something of a hybrid.' " *McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 357, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995) (internal citations omitted). The substantive provisions of the ADEA are modeled after Title VII, while its remedial provisions incorporate provisions of the FLSA. *Id.*

Nearly all of the cases relied on by Defendants are outdated on this issue because the Seventh Circuit has rejected this exact argument in *Levin v. Madigan*, 692 F.3d 607 (2012). In *Levin*, the Seventh Circuit engaged in an exhaustive discussion about whether the ADEA precludes a remedy for age - based claims under the Equal Protection Clause via §1983, and ultimately it concluded that it does not based on the "ADEA's lack of legislative history or statutory language precluding constitutional claims, and the divergent rights and protections afforded by the ADEA as compared to a § 1983 equal protection claim." *Id.* at 617. The Seventh Circuit also recognized – as Defendant argues here – that "a plaintiff may not seek to enforce rights conveyed by Title VII through a § 1983 claim." *Id.* at 620, FN4. But it was ultimately moved by the differences in rights and protections, and a different legislative history, to conclude that the ADEA does not preclude a claim for age - based Equal Protection violations. Because nearly every single case cited by the Defendants were issued prior to *Levin*, and the only case that Defendants cite to *post-Levin* is *Logan v. City of Chicago*, which relied on the reasoning in Schroeder and did not even mention the holding in Levin and therefore, none of Defendants' cases impact this result and they are irrelevant. 2018 WL 5279304, at *2–3 (N.D. Ill. Oct. 24, 2018). Accordingly, the Motion should be denied on this basis – McDonald is allowed to bring her § 1983 claim for age discrimination against Yarbrough and Raymond as a matter of *Levin*.

9

### B. McDonald Requests Leave to Replead the Defendant in Counts II and III to Explicitly State, Karen Yarbourgh in her Official Capacity.

Plaintiff acknowledges that the Complaint does not directly state that Karen Yarbrough is sued in her official and individual capacities, which makes it unclear whether Plaintiff is asserting claims against Karen Yarbrough in her individual capacity only. Although when the complaint is read in its entirety, the factual pleadings and counts establish that McDonald is seeking liability against Yarbrough in both her individual and official capacities. As such, Plaintiff agrees with the Defendant's reasoning and requests leave to file an Amended Complaint to clarify the proper Defendant as Karen Yarbrough in her official capacity for Counts II and III. McDonald withdraws Counts II and III as they relate to Raymond.

### C. Counts II and III should not be dismissed because McDonald properly filed a charge with the EEOC and requested a right to sue letter.

Counts II and III should not be dismissed because Plaintiff properly filed a charge with the EEOC and timely requested a right to sue ("RTS") letter. (See attached Ex. 1). While it is true that a right to sue letter from the EEOC is a necessary step in the filing process for an employment discrimination case, it is not a rule so rigid and technical that it cannot be examined alongside the facts and circumstances surroundings its request and issue. *See Nicholas v. Milwaukee Bd. of Sch. Directors*, No. 15-CV- 345-PP, 2015 WL 3490685, at *1 (E.D. Wis. June 2, 2015) ("[C]ourts do not demand hyper-technical compliance with the filing requirements of Title VII."); *see also Hill v. Vill. of Franklin Park*, No. 07CV4335, 2008 WL 686256, at *3–4 (N.D. Ill. Mar. 11, 2008) ("[E]quity requires modifying the requirement of a right-to-sue letter in [plaintiff]'s situation.").

The EEOC has not yet responded with a RTS letter. *See Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124, 128–29 (7th Cir.1989) ("Although the charge-filing requirement is

10

not jurisdictional, filing an EEOC charge and receiving a right-to-sue letter is a prerequisite to suit unless the claimant's failure to receive a right-to-sue letter is attributable to EEOC error."). On April 25, 2022, McDonald requested a copy of the right to sue letter from the EEOC, which the EEOC never responded to. (See Prior Ex. 1). On August 8, 2022, McDonald again requested the status of the EEOC's RTS letter but did not substantively respond with the RTS letter (Ex. 2).

To date, McDonald has not received a response to any of the three attempts she made requesting the RTS letter. McDonald acted diligently and filed copies of her correspondence with the EEOC as Exhibits 1 and 2. Accordingly, this matter should be stayed pending the EEOC issuing the RTS letter. *See, e.g. Principe v. Vill. of Melrose Park*, 2020 WL 4815908, at *3 (N.D. Ill. Aug. 18, 2020) (denying defendant's motion to dismiss for plaintiff's failure to have received the EEOC right to sue letter where plaintiff filed the letter on the docket during the pendency of the motion to dismiss). This mere technicality, through no fault of McDonald, does not warrant dismissal.

Moreover, Defendants' contention that Counts II and III should not be stayed is unpersuasive. It is common practice for plaintiffs to include discrimination counts in multi-count complaints and request a stay of such counts until the EEOC issues a right-to-sue letter. *See Palka v. City of Chicago*, 662 F.3d 428, 438 (7th Cir. 2011). In *Palka*, this Court recognized five options for cases involving mixed Title VII/ADEA and other count complaints: "We have held that a litigant in this position has at least five options to preserve his claim: (1) he can "ask the EEOC or its state counterpart to accelerate the administrative process," *Herrmann*, 999 F.2d at 225; (2) he can seek an agreement with his former employer "not to plead the statute of limitations," *Id.*; (3) he can "agree [with his employer] to split a single claim into two or more suits," *Id.*; (4) he can "delay[ ] the filing of [the] first suit" until the last possible moment, *Brzostowski*, 49 F.3d at 339;

11

or (5) he can "request[ ] that the court postpone or stay the first case" until he receives the right-to-sue letter, id." *Palka v. City of Chicago*, 662 F.3d 428, 438 (7th Cir. 2011). *Palka* recognized that for the plaintiffs there, "seeking a stay of their § 1983 actions while awaiting their right-to-sue letters—would have been a viable way for the *Palkas* to avoid claim-splitting." *Id.* This strategy has been endorsed in other cases. *See Brzostowski v. Laidlaw Waste Systems, Inc.*, 49 F.3d 337, 339 (7th Cir. 1995)("as a practical matter, [plaintiff] could have delayed the filing of his first suit or requested that the court postpone or stay the first case."); accord *Hermann v. Cencom Cable Associates, Inc.*, 999 F.2d 223 (7th Cir. 1993), strongly endorses exactly what McDonald did in this case: "And finally the employee can sue on [her] other claims, ask the court—and again [she] would have a very strong case for doing so—to stay the proceedings until the Title VII administrative process is complete, and then if the process does not end in a way that satisfies [her] amend [her] complaint to add a Title VII count. These possibilities make the danger that applying res judicata in Title VII suits will interfere with the legislative design remote." *Id.* Therefore, the Defendants' argument must be rejected as to this Count.

### III. This Court should Exercise Supplemental Jurisdiction over Counts IV and V

Defendants spill considerable ink listing the reasons why the Court should decline to exercise supplemental jurisdiction but provide zero substantive analysis as to Counts IV and V. Provided that the Court does not dismiss McDonald's Complaint with prejudice, the Court must reject Defendants' argument to decline supplemental jurisdiction. Since Defendants do not challenge the substantive claims of Counts IV and V and therefore both counts should stand on that basis.

### IV. Indemnification

Again, Defendants argue McDonald's Count VI claim for Indemnification should be dismissed. Because the Motion should be denied in its entirety or Plaintiff should be allowed to replead the failed claims, Plaintiff's indemnification claim against Cook County, Illinois should stand. *See Coleman v. Sheriff of Cook County*, 16-cv-2682, 2018 WL 3740558 at *6 (N.D. Ill. 2018) ("Sheriff's and Cook County's liability rises and falls together."); Carver v. Sheriff of LaSalle County, 324 F.3d 947, 947-48 (7th Cir. 2003).

V. **LEAVE TO AMEND COMPLAINT SOUGHT IN THE EVENT THE MOTION IS GRANTED.**

While McDonald asserts that Defendants' Motion should be denied, if the Court should grant Defendants' Motion, McDonald respectfully requests that the Court do so without prejudice and grant her leave to file an amended complaint consistent with the Court's findings.

## CONCLUSION

WHEREFORE, the Plaintiff, Yolanda McDonald respectfully requests that this Honorable Court deny the Defendants' 12(b)(6) Motion to Dismiss, and for any other relief deemed just and proper. If the Court is inclined to grant Defendant's Motion in whole or part, the Plaintiff prays for an opportunity to amend her Complaint.

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that he served the foregoing document on all counsel of record via this Court's CM/ECF Filing System on August 9, 2022, and that such counsels are registered e-filers.

s/ Gianna Scatchell, esq.