# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

YOLANDA McDONALD,

    *Plaintiff*,

v.

KAREN A. YARBROUGH, *Clerk of the Circuit Court in an individual capacity*, LAUREN RAYMOND, *in an individual capacity, and* COOK COUNTY, *as indemnitor*,

    *Defendants*.

No. 22 CV 2143

Judge Lindsay C. Jenkins

**MEMORANDUM OPINION AND ORDER**

In a suit against her former employer, Plaintiff Yolanda McDonald alleges First Amendment retaliation and age-based discrimination and retaliation under Title VII and Illinois state law against Cook County, Karen Yarbrough, Cook County Clerk,[1] and Lauren Raymond. [Dkt. No. 1.] She additionally seeks indemnification against the County. [*Id.*] Before the Court is Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. [Dkt. No. 9.]

For the reasons stated below, Defendants' motion is granted in part and denied in part. [Dkt. No. 9.] The Court dismisses Defendant Karen Yarbrough in her official capacity from Count I and Defendants Lauren Raymond and Karen Yarbrough in

---

[1] As the Defendants correctly note [Dkt. No. 9 at 1 n.1], Karen Yarbrough is the Cook County Clerk, not the Clerk of the Circuit Court, as is listed on the case caption. Accordingly, the Court will refer to Karen Yarbrough as her correct title.

their individual capacities from Counts II and III. The Court grants Defendants' motion to dismiss Count I as it relates to McDonald's complaints of "payroll issues" to the Clerk's Office legal department and the Illinois State Comptroller, as well as her complaints of age discrimination to internal Clerk's Office employees. The Court denies the motion to dismiss Count I as it relates to McDonald's complaints of "payroll issues" to the OIG. McDonald is granted leave to file an amended complaint as to certain aspects of her Count I claim consistent with the discussion that follows.

## I.   Background[2]

Because of the limited grounds of Defendants' motion to dismiss, the Court focuses only on the facts applicable to those arguments. On December 27, 2019, Plaintiff Yolanda McDonald began working as the Director of Human Resources in the Cook County Clerk's Office. [Dkt. No. 1 at ¶ 16.] At that time, Defendant Karen Yarbrough was the elected Cook County Clerk, an office organized and administered by Defendant Cook County. [*Id.* at ¶ 3.] During her tenure at the Clerk's Office, McDonald's direct supervisor was Defendant Lauren Raymond, Chief of Human Resources for the Cook County Clerk's Office. [*Id.* at ¶¶ 4, 18.] McDonald was eventually terminated on December 15, 2020. [*Id.* at ¶ 19.] At the time of her termination, McDonald was fifty years old. [*Id.* at ¶¶ 24–25.]

---

[2]     For purposes of Defendants' motion to dismiss [Dkt. No. 9], the Court accepts as true all well-pled allegations set forth in the complaint [Dkt. No. 1] and draws all reasonable inference in McDonald's favor. *See Calderon-Ramirez v. McCament*, 877 F.3d 272, 275 (7th Cir. 2017).

At various times during her employment as Director of Human Resources, McDonald managed payroll, including "auditing and monitoring employee time and attendance." [*Id.* at ¶¶ 19, 45.] From March 2020 to December 2020, McDonald reported various "payroll issues" to Raymond.[3] [*Id.* at ¶ 19.] Those "payroll issues" included "[e]mployees . . . not receiving paychecks," "terminated, separated, or deceased employees . . . still [being] listed on the Clerk's payroll," "[e]mployees that were on unpaid leaves or were collecting short-term disability pensions . . . receiving paychecks," "[t]emporary election workers . . . not receiving their paychecks or . . . only receiving partial paychecks," employees not receiving their "annual wage . . . and cost of living" increases, and employees who had resigned "being paid personal days on separation" in error. [*Id.* at ¶ 20.] McDonald alleges that because she reported these issues, Raymond "banned" or "shut" her "out" from the payroll system, making her unable to address various inquiries about payroll problems. [*Id.* at ¶¶ 19, 21–22.]

On August 13, 2020, Raymond "gave McDonald [the] authority to do payroll and [McDonald] began auditing and monitoring employee time and attendance as part of her duties." [*Id.* at ¶ 45.] In this capacity, "McDonald review[ed] the time card history for two of her subordinates . . . and discovered several payroll discrepancies," including inappropriate time punches, improper amending of employee time cards, and incorrect employee title classifications. [*Id.* at ¶ 46.] McDonald alleges that she

---

[3]     In the complaint, McDonald alleges that she reported various "payroll issues" from March 2020 to December <u>2021</u> [Dkt. No. 1 at ¶ 19], but that she was terminated in December of 2020 [*Id.* at ¶ 113.] December 2021 appears to be a typographic error, one that is worth correcting in any amended complaint.

was hindered in her ability to complete these tasks because Raymond "deliberately excluded" her from emails regarding the resolution of these issues. [*Id.* at ¶¶ 55–56.]

On August 25, 2020, the Illinois State Comptroller's Office emailed McDonald "to confirm whether several employees at the Clerk's office were overpaid." [*Id.* at ¶ 47.] On October 30, 2020, after emailing Raymond and Yarbrough, among others, about the Comptroller's inquiry and receiving no response, "McDonald emailed the Comptroller's Office with documentation that at least $17,260.00 was overpaid to six employees before she took over the payroll." [*Id.* at ¶ 70–71.]

McDonald alleges that as a result, Raymond submitted two false write-ups about McDonald "because McDonald had violated Raymond's unofficial policy of 'what happens in HR stays in HR.'" [*Id.* at ¶¶ 72, 85–87.] The write-ups accused McDonald of "allegedly not taking [Raymond's] phone calls and supposedly hanging up on Raymond during" a phone call on October 27, 2020. [*Id.* at ¶ 85–87.] McDonald reported both write-ups to her superiors, including the Director of Human Rights and Ethics, the Deputy Clerk, and the Chief Ethics Officer and Legal Counsel for the Clerk's Office. [*Id.* at ¶¶ 77–80, 94.] When McDonald reported the first write-up, the Director of Human Rights and Ethics emailed McDonald back to note "that she was concerned about the issues McDonald had reported about Raymond." [*Id.* at ¶ 80.] After the second write-up, on November 14, 2020, McDonald made a separate complaint that Raymond was "creating a hostile work environment" to the Director of Human Rights and Ethics, the Deputy Clerk, and the Chief Ethics Officer and Legal Counsel for the Clerk's Office. [*Id.* at ¶ 94.]

4

On December 14, 2020, McDonald emailed the Clerk's Office legal department to verify a purported wage freeze. [*Id.* at ¶ 109.] After the internal counsel forwarded McDonald's email to Raymond, Raymond emailed McDonald to "coordinate with [her] before [she] sends answers to anything of a legal nature." [*Id.* at ¶¶ 109–11.] McDonald claims later in her complaint that she was retaliated against for reporting payroll irregularities to the Office of the Inspector General ("OIG").[4] [*Id.* at ¶ 138.]

McDonald additionally alleges that Raymond made various ageist comments to her and was generally harassing her. [*Id.* at ¶¶ 26, 37–42.] McDonald reported these remarks and Raymond's "harassing behavior" to Yarbrough, the Deputy Clerk, the Chief Ethics Officer and Legal Counsel, and the Director of Human Rights and Ethics. [*Id.* at ¶¶ 40–42, 53, 77–80, 93–97.]

On April 25, 2022, McDonald filed the present suit in federal court against Cook County, Karen Yarbrough, and Lauren Raymond. [Dkt. No. 1 at ¶¶ 3–4.] McDonald makes the following claims: (1) Count I alleges First Amendment Retaliation; (2) Count II alleges discrimination based on age under Title VII; (3) Count III alleges retaliation based on age under Title VII; (4) Count IV alleges discrimination based on age under Illinois Human Rights Act; (5) Count V alleges unlawful retaliation under the Illinois Whistleblower Act; and (6) Count VI alleges indemnification against Cook County. [*Id.* at ¶¶ 136–181.] Regarding Count I,

---

[4] McDonald does not specify whether she reported these payroll issues to the City of Chicago Office of the Inspector General or the Illinois Office of Inspector General. [*See generally* Dkt. No. 1, 13.] Given the mission of both agencies, the Court observes that it seems likely that McDonald reported to the City of Chicago Office of the Inspector General but will refer to the office as the "OIG" to conform to McDonald's complaint. [Dkt. No. 1 at ¶¶ 138–39.]

McDonald alleges that she made complaints to the Clerk's Office legal department, the Illinois State Comptroller, and the OIG regarding Raymond, who "created a hostile work environment because of her age and in retaliation for reporting payroll irregularities." [*Id.* at ¶¶ 138–39.] Thereafter, Defendants filed this dismissal motion.

## II.   Legal Standard

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the complaint must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all of McDonald's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). However, for plaintiff's allegations to survive a motion to dismiss, the complaint's well-pled facts must allow the Court "to infer more than the mere possibility of misconduct." *Ashcroft*, 556 U.S. at 679. Additionally, the Court

"need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (cleaned up) (quoting *Iqbal*, 556 U.S. at 678). Evaluating "whether a complaint states a plausible claim for relief" is a "context-specific task that requires the [Court] to draw on its judicial experience and common sense." *Ashcroft*, 556 U.S. at 679.

## III. Analysis

### A. First Amendment Retaliation in Count I

McDonald's First Amendment retaliation claim consists of two parts. She alleges that she engaged in protected activities when she complained of "payroll irregularities" to three entities: the Clerk's Office legal department; the Illinois State Comptroller; and the OIG; and when she complained that Raymond had created a hostile work environment based on McDonald's age. [*Id.* at ¶¶ 138–39.]

Defendants argue that the Court should dismiss McDonald's First Amendment retaliation claim for two reasons. First, they say that when McDonald reported "payroll irregularities" to the above listed entities she spoke as a private citizen not on a matter of public concern. Second, they say that McDonald's allegations concerning her age amount to ADEA retaliation, not a First Amendment retaliation claim under § 1983. [Dkt. No. 9 at 3–7; Dkt. No. 15 at 2–6.] The Court will take each of Defendants' arguments in turn.

### 1. McDonald's Reports of "Payroll Irregularities"

Defendants argue that McDonald fails to plead a viable First Amendment retaliation based on her reports of "payroll irregularities." [Dkt. No. 10 at 4–6.] To make out a prima facie case of First Amendment retaliation, McDonald must show: "(1) [s]he engaged in activity protected by the First Amendment; (2) [s]he suffered a deprivation that would likely deter First Amendment activity; and (3) the First Amendment activity was at least a motivating factor behind the deprivation McDonald was made to suffer." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (cleaned up) (citing *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)). For a public employee, like McDonald, to have her speech "protected under the First Amendment, the employee must establish that she spoke as a citizen on a matter of public concern." *Kubiak v. City of Chicago*, 810 F.3d 476, 481 (7th Cir. 2016) (citing *Garcetti v. Ceballos,* 547 U.S. 410, 418 (2006)). Determining "whether [McDonald's] speech is constitutionally protected is a question of law." *Id.* at 481 (citing *Houskins v. Sheahan*, 549 F.3d, 489 (7th Cir. 2008)).

To determine whether McDonald spoke as a citizen or a private individual, the Court looks to whether McDonald made the alleged statements "pursuant to her official duties." *Id.* (citing *Garcetti,* 547 U.S. at 421). "Determining the official duties of a public employee requires a practical inquiry into what duties the employee is expected to perform and is not limited to the formal job description." *Id.* (citing *Houskins,* 549 F.3d at 490); *see also Garcetti,* 547 U.S. at 424–25 (observing that "[f]ormal job descriptions often bear little resemblance to the duties an employee

actually is expected to perform"). Next, the Court considers whether the employee's statement was a matter of public concern. *Kubiak*, 810 F.3d at 481. The Supreme Court has defined "public concern" to mean "legitimate news interest," or "a subject of general interest and of value and concern to the public at the time of publication." *Meade v. Moraine Valley Cmty. Coll.*, 770 F.3d 680, 684 (7th Cir. 2014) (cleaned up) (quoting *City of San Diego v. Roe*, 543 U.S. 77, 83–84 (2004) (per curiam)). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement." *Connick v. Myers*, 461 U.S. 138, 147–48 (1983). In this analysis, "content is the most important" and "[t]he motive of the speak is relevant as part of the context . . . but is not dispositive." *Kubiak*, 810 F.3d at 483.

To determine whether McDonald spoke as a public employee or private citizen, the Court must determine McDonald's "official duties." *Kubiak*, 810 F.3d at 481. Because this inquiry "is not limited to the formal job description," the Court considers both what McDonald was tasked with on paper and in practice. *Id.*

As discussed in the background section, McDonald worked as the Director of Human Resources and describes "payroll" as one of her "duties." [*Id.* at ¶¶ 16, 19, 21–22, 45.] "Payroll" included "auditing and monitoring employee time and attendance." [*Id.* at ¶¶ 19, 45.] McDonald alleges that she reported certain "payroll issues" or "irregularities," which generally were employee over- and under-payment, and individuals listed as employees who were no longer employed by the Clerk's Office. [*Id.* at ¶ 20.] McDonald alleges that she was retaliated against by Raymond and

9

Yarbrough for reporting these "payroll irregularities" to the Illinois State Comptroller, the Clerk's Office legal department, and the OIG. [*Id.* at ¶¶ 45, 138.]

McDonald alleges that on August 25, 2020, the Illinois State Comptroller requested information from her on "whether several employees at the Clerk's office were overpaid." [*Id.* at ¶ 47.] After notifying Raymond, Yarbrough, and other superiors within the department about the Illinois State Comptroller's inquiry and receiving no response, "McDonald emailed the Comptroller's Office with documentation that at least $17,260.00 was overpaid to six employees before she took over the payroll." [*Id.* at ¶¶ 70–71.] On December 14, 2020, McDonald alleges that she emailed the Clerk's Office legal department to verify a purported wage freeze. [*Id.* at ¶ 109.] After the internal counsel forwarded her email to Raymond, Raymond requested that McDonald "coordinate with [her] before [McDonald] sen[t] answers to anything of a legal nature." [*Id.* at ¶¶ 109–11.] The complaint does not allege what the content of her complaint to the OIG was or when it occurred. [*See generally id.*]

In her response to Defendants' motion to dismiss, McDonald seeks to clarify her complaint. *See Help at Home Inc. v. Med. Capital, L.L.C.*, 260 F.3d 748, 752–53 (7th Cir. 2001) (citing *Hrubec v. Nat'l R.R. Passenger Corp.*, 981 F.2d 962, 963–64 (7th Cir. 1992) (cleaned up) ("A plaintiff need not put all of the essential facts in the complaint; [s]he may add them by affidavit or brief in order to defeat a motion to dismiss if the facts are consistent with the allegations of the complaint."). McDonald alleges that "she reported suspected misconduct" in her complaints to the Illinois State Comptroller and the OIG and claims that they "point[] to corruption, waste,

management, and violations of state and federal laws." [Dkt. No. 13 at 7.] The Court addresses each complaint in turn.

When McDonald "complained" to the Clerk's Office legal department in December 2020, she did not speak as a private citizen and therefore, her speech is unprotected as a matter of law. As McDonald herself notes, as the Director of Human Resources, her "duties" include "auditing and monitoring employee time and attendance," including ensuring that their wages are paid at the proper rate. [*Id.* at ¶¶ 19, 45.] In her email to the Clerk's Office, McDonald sought to "verify" whether a "purported wage freeze" was in effect. [*Id.* at ¶ 109.] Even accepting McDonald's allegations as true, as the Court must, verifying whether an employee's wages were subject to a wage freeze falls squarely within McDonald's duty to audit and monitor employee time. *Kubiak*, 810 F.3d at 481.

McDonald's only substantive rebuttal is that the emails were not part of her job duties at that time because she was "shut out" of payroll until August 2020 and thereafter, "shut out of meetings and communications regarding . . . payroll discrepancies." [Dkt. No. 13 at 5.] Not so. At the time of McDonald's "complaint," in December 2020, McDonald was no longer barred from completing payroll. [Dkt. No. 1 at ¶ 45: "[o]n or about August 13, 2020, Raymond gave McDonald authority to do payroll and she began auditing and monitoring employee time and attendance as part of her duties."] McDonald's alleged reduced ability to communicate with certain coworkers about payroll does not alter this conclusion. Indeed, her assertion that she was somewhat ineffective because she was "shut out" regarding certain payroll issues

implicitly concedes that her duties included addressing these problems, but for her coworkers' interference. The Court accordingly concludes that McDonald was acting pursuant to her official duties when she communicated with the Clerk's Office legal department in December of 2020 and thus, was not speaking as a private citizen on a matter of public concern. So, her First Amendment retaliation claim based on "payroll irregularity" complaints to the Clerk's Office legal department are dismissed.

The Court further concludes that McDonald did not speak as a private citizen when she emailed the Illinois State Comptroller's Office in October of 2020 and therefore, that speech is unprotected as a matter of law. McDonald, as the Director of Human Resources, was tasked with "payroll," which feasibly includes communicating with the comptroller regarding the accuracy of employee compensation. [Dkt. No. 1 at ¶ 45.] The fact that this fell within her job duties is confirmed by McDonald's own allegations. McDonald alleges that the Illinois State Comptroller emailed her on August 25, 2020 to "confirm whether several employees at the Clerk's [O]ffice were overpaid." [*Id.* at ¶ 47.] In response, McDonald notified her department superiors. [*Id.* at ¶¶ 48, 70.] When she received no response, McDonald responded to the Illinois State Comptroller's request. [*Id.* at ¶ 71.] McDonald does not allege that this was somehow outside of her job duties, but rather that her superiors ignored her. [*Id.*] McDonald's brief acknowledges that her efforts were not a "complaint" as much as to "aid[] in an audit that the [C]omptroller's [O]ffice requested." [Dkt. No. 13 at 4.]

Even if specifically responding to the Illinois State Comptroller was not within McDonald's formal job duties, as McDonald seems to argue [Dkt. No. 13 at 5], in practice, responding to an email regarding one's work seems to fall within the duties of what a Human Resources Director would be expected to perform. *See Garcetti*, 547 U.S. at 424–25 ("Formal job descriptions often bear little resemblance to the duties an employee actually is expected to perform."). Although the Illinois State Comptroller was allegedly an office external to the Clerk's Office, that alone is not dispositive of whether McDonald acted outside of her job duties in responding to the Comptroller's inquiry. *See Spalding v. City of Chicago*, 186 F. Supp. 3d 884, 904 (N.D. Ill 2016) (observing the "settled principle that if a public employee reports official misconduct . . . to an external body with formal oversight responsibility, then the employee speaks pursuant to her official duties and her speech is unprotected by the First Amendment"); *see also Tamayo v. Blagojevich*, 526 F.3d 1074, 1091 (7th Cir. 2008) (holding that an Illinois Gaming Board employee's report to "a legislative committee responsible for overseeing the [Gaming Board's] activities" was unprotected First Amendment speech). The Court, therefore, dismisses McDonald's First Amendment retaliation claim based on "payroll irregularity" complaints to the Illinois State Comptroller's Department in October 2020.

McDonald's response to the motion to dismiss leaves the Court unclear as to whether McDonald made a *separate* complaint to the Illinois State Comptroller apart from the email correspondence concerning the Comptroller's audit. [*See* Dkt. No. 13 at 4 (McDonald alleges that Yarbrough and Raymond "retaliated against her in

violation of her First Amendment rights when she was fired after she had reported several instances of payroll irregularities, improper employee time-keeping fraud, and *even escalated the payroll irregularities to* the OIG, *the County's comptroller department*, and *aided in an audit that the comptroller's office requested*.") (emphasis added).] If McDonald made separate complaints to the Illinois State Comptroller—other than the emails described above in response to the audit—she should allege those in her amended complaint, bearing in mind the required analysis for whether a public employee's speech is constitutionally protected.

Finally, the Court concludes that McDonald spoke as a private citizen on a matter of public concern sufficient for a First Amendment retaliation claim when she complained to the OIG. McDonald alleges that she reported "the management of payroll" to the OIG, and that "she reported suspected misconduct to . . . the OIG." [Dkt. No. 1 at ¶ 139; Dkt. No. 13 at 7.]. McDonald then cites *Spiegla v. Hull* for the proposition that "speech alleging government corruption and malfeasance is of public concern in its substance." [*Id.*]

While the Court agrees with Defendant that McDonald's complaints regarding the OIG are relatively sparse [Dkt. No. 15 at 4–5], the Court accepts the allegations both in her complaint and her brief that she reported "suspected misconduct" regarding payroll to the OIG and accordingly spoke as a private citizen, not a public employee. The Court must be "especially careful in concluding that employees have spoken pursuant to their official duties when the speech concerns allegations of public corruption." *See Kristofek v. Vill. of Orland Hills*, 832 F.3d 785, 793 (7th Cir. 2016).

14

Generally, a public employee is not speaking pursuant to her official duties when she "reports misconduct outside established channels or reports something for which he did not have any formal responsibilities." *Logan v. City of Chicago*, 2018 WL 5279304, at \*4 (N.D. Ill. Oct. 24, 2018) (internal quotation marks omitted); *see also Cage v. Harper*, 2021 WL 3022316, at \*18 (N.D. Ill. July 16, 2021) (observing Seventh Circuit law that "even employees who have a responsibility to report misconduct can do so in a manner that falls outside their official duties," for instance "when a low-level employee reports misconduct outside the chain of command").

Other courts within this district have similarly differentiated between internal reports to human resources departments and external reports to the OIG. *See Logan*, 2018 WL 5279304, at \*4 (concluding that a public employee's report of official misconduct to an internal human resources department was unprotected First Amendment speech but that his report to the OIG—"a separate and independent body that aims to root out corruption"—was protected); *see also Balder v. Meeder*, 2022 WL 2340874, at \*4 (N.D. Ill. June 29, 2022) (concluding that a public employee's internal report of misconduct to human resources was unprotected but her report to the union was protected as a report "outside established channels").

McDonald had no formal responsibility to report misconduct to the OIG, only to complete payroll.[5] This does not necessarily include external reporting, as

---

[5] Defendants argue that McDonald had a duty under County Ordinance to report any potential malfeasance. [Dkt. No. 15 at 5–6.] Defendants' cited Ordinance relates to "County employees . . . seeking County contracts, grants, licenses, or certification of eligibility for County contracts," none of which apply to McDonald. *See* Section 2-285(f) Code of Ordinances, Cook County, Illinois. As such, the Court rejects Defendants' argument to the contrary.

Defendants contend [Dkt. No. 15 at 2–3]. *See Kristofek*, 832 F.3d at 793 (internal quotation marks omitted) ("For the speech to lack constitutional protection, it must constitute government employees' work product that has been commissioned or created by the employer."). Like in *Logan*, McDonald externally reported to a watchdog agency regarding suspected misconduct. *Logan*, 2018 WL 5279304, at *4. As such, the Court concludes that on this score, she spoke as a private citizen.

Defendants nevertheless contend that McDonald did not speak on a matter of public concern. [Dkt. No. 9 at 4–5.] Given the early stage of this matter and McDonald's claims of malfeasance, the Court disagrees. Internal misconduct at the Clerk's Office leading to "payroll issues" would likely be of "legitimate news interest," or "a subject of general interest and of value and concern to the public at the time of publication." *Meade v. Moraine Valley Cmty. Coll.,* 770 F.3d 680, 684 (7th Cir. 2014) (cleaned up). The content of McDonald's complaint was suspected malfeasance in the form of a complaint to an "independent body that aims to root out corruption" in the context of greater issues within the department. *See Logan*, 2018 WL 5279304, at *4; *see also Connick*, 461 at 147–48. Put together and accepting McDonald's allegations as true, McDonald's complaint to the OIG was a matter of public concern. *See Jackson v. Marion County¸* 66 F.3d 151, 153–54 (7th Cir. 1995) (stating that the notice pleading standard requires that a plaintiff "need not plead facts; [s]he can plead conclusions . . . [but] the conclusions must provide the defendant with at least minimal notice of the claim"). As such, the Court denies Defendants' motion to dismiss regarding McDonald's First Amendment retaliation claim based on her complaints to the OIG.

16

The Court would be remiss, however, if it did not note that McDonald's allegations could improve with additional detail.

To conclude, the Court grants Defendants' motion, in part, and dismisses McDonald's First Amendment retaliation claims as they relate to (a) her December 2020 email to the Clerk's Office legal department concerning "payroll irregularities"; and (b) her August 2020 email to the Illinois State Comptroller also involving "payroll irregularities." The Court denies Defendants' motion regarding McDonald's First Amendment retaliation claims as they relate to her complaints of "suspected misconduct" to the OIG. The Court grants McDonald leave to amend her complaint if she can do so consistent with this opinion. *See* Fed. R. Civ. P. 15(a) (allowing the court to grant leave to amend complaints "when justice so requires"). Specifically, McDonald is granted leave to add factual detail to her First Amendment retaliation claim regarding reports of suspected misconduct to the OIG. She may also replead Count I to include any complaints she made to the Illinois State Comptroller regarding misconduct apart from the October 2020 emails discussed above.

## 2.    McDonald's Reports of Age Discrimination

Defendants' second argument in favor of dismissal of Count I relates to McDonald's First Amendment retaliation claim based on her complaints that Raymond created a hostile work environment based on McDonald's age. Defendants argue that, to the extent McDonald alleges retaliation based on age, her claim is inappropriate under 42 U.S.C. § 1983 and would be a more appropriate ADEA retaliation claim. [Dkt. No. 10 at 6; Dkt. No. 15 at 8.] To state a § 1983 claim,

McDonald must allege that she was "deprived of a right secured by the Constitution or federal law, by a person acting under color of law." *Thurman v. Vill. of Homewood*, 446 F.3d 682, 687 (7th Cir. 2006).

The parties dispute whether current Seventh Circuit precedent bars a § 1983 suit based on conduct coextensive with a retaliation claim under Title VII or ADEA. *Compare* [Dkt. No. 9 at 6–7] *with* [Dkt. No. 13 at 8–9] *and* [Dkt. No. 15 at 6–8]. Neither party gets to the heart of the issue in either *Schroeder* or *Levin* or the pertinent facts of this case. In both cases, the Seventh Circuit answered whether the plaintiff could maintain a § 1983 suit based on an Equal Protection violation when the conduct could similarly be sued under either Title VII, *see Schroeder v. Hamilton School District*, 282 F.3d 946, 948 (7th Cir. 2002), or the ADEA, *see Levin v. Madigan*, 692 F.3d 607, 617–22 (7th Cir. 2012).[6] But McDonald does not allege a § 1983 suit based on an Equal Protection violation; she claims a First Amendment violation. As such, neither case is truly directly on point.[7] *See Schroeder*, 282 F.3d at 951 (declining to "hold explicitly that Title VII analysis/law shall apply in § 1983 cases where discrimination in employment is *the basis for the claimed Equal Protection violation*" (emphasis added)); *Levin*, 692 F.3d at 616 (framing the question presented as "[w]hether the ADEA precludes a § 1983 *equal protection* claim" (emphasis added)).

---

[6]     The Court notes that despite McDonald's arguments in her response regarding *Levin v. Madigan* and ADEA retaliation claims [Dkt. No. 13 at 9], she has not plead a claim for ADEA retaliation.

[7]     Similarly, Defendants' reliance on *Logan*, 2018 WL 5279304, is unavailing, as it too handles a § 1983 claim premised on an Equal Protection violation. [Dkt. No. 9 at 7.]

Putting aside the parties' equal protection arguments in briefing, McDonald's allegations as pled fail to bear out a § 1983 claim. McDonald's allegations regarding age-based discrimination reporting and alleged retaliation all concern internal reports to Yarbrough and the Clerk's Office legal department. [Dkt. No. 1 at ¶¶ 39–41, 53, 77–80, 93–97.] As discussed above, internal reports of age discrimination do not rise to the level of a First Amendment violation for a public employee. *See Kubiak*, 810 F.3d at 481–82 (concluding that an employee's internal workplace complaints were pursuant to her official job duties because "an employee who is verbally assaulted by a colleague would be expected to report the inappropriate behavior to a supervisor" as "speech intimately connected with her job"); *see also Davis v. Cook Cnty.*, 534 F.3d 650, 652–53 (7th Cir. 2008) (rejecting an employee's argument that her complaint about harassment by her co-workers was within her job duties because it was "intimately connected with her job"); *Cage*, 2021 WL 3022316, at *18; *Logan*, 2018 WL 5279304, at *4; *Balder*, 2022 WL 2340874, at *4. McDonald's allegations seem to fall squarely within this body of caselaw.

For these reasons, the Court dismisses Count I as it relates to McDonald's complaints of workplace harassment based on her age. If McDonald believes that she can rectify her age-discrimination claims (either under § 1983 or the ADEA), the Court grants her leave to do so. She is reminded, however, that *any* First Amendment retaliation claim under § 1983 against a municipality requires her to sufficiently

plead the constitutional violation, including what or who caused the constitutional violation. *See Levin*, 692 F.3d at 621.[8]

## B.     Title VII Discrimination and Retaliation in Counts II and III

Defendants argue that McDonald has failed to administratively exhaust Counts II and III and the Court should accordingly dismiss these counts. [Dkt. No. 10 at 8–9.] Given that McDonald has since received and filed her EEOC right-to-sue letter on the docket [Dkt No. 18], any failure to exhaust has been cured. *See Perkins v. Silverstein*, 939 F.2d 463, 471 (7th Cir. 1991) (holding that Title VII claims may have been properly dismissed prior to plaintiff's "receipt of a right-to-sue letter, the receipt of that letter after the complaint had been filed, but before it had been dismissed, effectively cured the deficiency in the original complaint"). As such, the Court concludes that McDonald's Title VII claims in Counts II and III have been administratively exhausted.

Defendants additionally argue that McDonald has failed to name the correct "employer" for her Title VII claims as McDonald did not name the Cook County Clerk's Office as a Defendant in her complaint. [Dkt No. 9 at 9–12.] McDonald responds by requesting that the Court allow her to replead to sue Defendant Karen Yarbrough in her official and individual capacity.[9] [Dkt. No. 13 at 10.] Defendants

---

[8]     Defendants have argued that McDonald's complaint fails to satisfy the requirements of a § 1983 claim against a municipality. The Court agrees that McDonald's current allegations in this regard are exceptionally thin. But since Defendants only raised this argument in their reply brief, McDonald has not had the opportunity to respond.

[9]     It is unclear from the face of the complaint which defendants McDonald seeks to find liable under Counts II and III. While the title of Count II states "Plaintiff v. Cook County," within the allegations, McDonald makes claims against "Defendant Cook County

are correct that liability for employment discrimination under Title VII can only be imposed on an individual who qualifies as an "employer." *See U.S. EEOC v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1281 (7th Cir. 1995). The central issue, which has not been addressed by the parties, is whether the Cook County Clerk's Office is a suable entity.

At least one court within this district concluded that the Clerk's Office is a suable entity, comparing the Cook County Clerk's Office to the Cook County Sheriff's Office. *Greer v. Orr*, 2001 WL 929757, at *3 (N.D. Ill. Aug. 15, 2001); *see also Connelly v. Cook Cnty. Assessor's Off.*, 583 F. Supp. 3d 1142, 1145–47 (N.D. Ill. 2022) (comparing the Cook County Assessor's Office to the Cook County Sheriff's Office to conclude that the former is a suable entity). This Court agrees with the discussion in *Greer* and finds that the Cook County Clerk's Office is a suable entity. Counts II and III are dismissed without prejudice, and McDonald is granted leave to replead these counts naming the correct defendant, the Cook County Clerk's Office. The Court additionally dismisses Defendant Karen Yarbrough and Defendant Lauren Raymond in Counts II and III in their individual capacities, as they are not proper "employer[s]" for the Title VII claims. *See AIC,* 55 F.3d at 1279–82; *see also Sattar v. Motorola, Inc.*, 138 F.3d 1164, 1168 (7th Cir. 1998) (holding that individual supervisors in their individual capacities do not fall within Title VII's definition of "employer").

---

Clerk," which the Court assumes to mean Karen Yarbrough, the Cook County Clerk. [Dkt. No. 1 at 21.] Similarly, McDonald styles Count II as a claim involving "Plaintiff v. Cook County," but does not specify whether she means Karen Yarbrough, Cook County, or both. [*Id.* at 23.] T]he Court, in granting McDonald leave to replead her complaint, advises her to clarify which defendants she seeks relief from in each count.

### C.   Remaining Counts

Because the Court has not dismissed the federal claims in Counts II and III, the Court accordingly asserts supplemental jurisdiction over McDonald's state law claims in Counts IV and V. *See* 28 U.S.C. § 1367(a); *see also Centres, Inc. v. Town of Brookfield, Wis.*, 148 F.3d 699, 704 (7th Cir. 1998). Additionally, the Court denies Defendants' request to dismiss Count VI, as Cook County is still an indispensable party as a potential indemnitor. *See Carver v. Sheriff of LaSalle Cnty.*, 324 F.3d 947, 948 (7th Cir. 2003) (internal citation omitted) ("[A] county in Illinois is a necessary party in any suit seeking damages from an independently elected county officer (sheriff, assessor, clerk of court, and so on) in an official capacity. Because state law requires the county to pay, federal law deems it an indispensable party to the litigation.").

## IV.   Conclusion

Defendants' motion is granted in part and denied in part. [Dkt. No. 9.] The Court dismisses Defendant Karen Yarbrough in her official capacity from Count I and dismisses Defendants Lauren Raymond and Karen Yarbrough in their individual capacities from Counts II and III. The Court dismisses Count I as it relates to McDonald's complaints of "payroll irregularities" to the Clerk's Office legal department and the Illinois State Comptroller, and dismisses her complaints of age discrimination to internal Clerk's Office departments. The Court denies the motion to dismiss Count I as it relates to complaints of "payroll irregularities" to the OIG. McDonald is granted leave to amend and she may: (a) add Defendant Cook County

22

Clerk's Office as a party in all applicable counts; (b) replead the allegations in Count I to include factual detail that supports her alleged reports of misconduct to the OIG; and (c) replead any misconduct complaints made to the Illinois State Comptroller apart from the October 2020 emails discussed above.

The amended complaint must be filed on or before April 21, 2023. Defendants shall file an answer May 5, 2023. The matter is set for an in-person status hearing in Courtroom 2119 on May 18, 2023, at 9:00 a.m. The parties shall file an initial status using the form on the Court's webpage on or before May 11, 2023.

Enter: 22-cv-2143

Date: March 31, 2023

_____
Lindsay C. Jenkins
United States District Judge