**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Yolanda McDonald | ) |
| | ) |
|         Plaintiff, | ) |
| | ) |
| v. | ) Case No. 22-cv-02143 |
| | ) |
| KAREN YARBROUGH, in her official and | ) Hon. Judge |
| individual capacities, LAUREN RAYMOND, | ) |
| in her official and individual capacities, | ) JURY TRIAL DEMANDED |
| COOK COUNTY CLERK'S OFFICE, and | ) |
| COOK COUNTY as indemnitor, | ) |
| | ) |
|         Defendants. | ) |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' PARTIAL RULE**
**12(b)(6) MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Plaintiff Yolanda McDonald, through her undersigned counsel, respectfully submits this Response to Defendants Rule 12(b)(6) Motion to Dismiss (Dkt. 30). For the reasons stated herein, Defendants' motion should be denied in its entirety.

## INTRODUCTION AND BACKGROUND

Plaintiff, Yolanda McDonald filed her First Amended Complaint against Defendants, Karen Yarbrough, Lauren Raymond, and Cook County (indemnitor). Plaintiff has stated, with proper detail, several instances in which Defendants violated multiple federal and Illinois statutes by harassing, and discriminating against her without proper justification after she made multiple complaints about illegal payroll practices, timecard fraud, among other unlawful activities.

## FACTUAL BACKGROUND

McDonald began working as the Director of Human Resources at the Clerk's office on in 2019. (FAC ¶ 16). At that time, Karen Yarbrough was elected as the Cook County Clerk. (Id. ¶ 3).

1

McDonald reported to Lauren Raymond, the Chief of the Human Resources at the Clerk's office. (¶ 18). McDonald experienced various difficulties working with Raymond, for example, Raymond refused to act on reports of timekeeping discrepancies, attendance policy violations by McDonald by an employee. (¶¶23, 28, 31). McDonald raised issues regarding the payroll from March 2020 until she was terminated in December 2021. (¶ 20). McDonald also asserts that Raymond deliberately shut her out of the payroll system and once she provided her with access to the payroll system, then shut her out of any meetings or communications regarding payroll. (¶19-20). McDonald began conducting an audit of the payroll and monitoring time and attendance records, which revealed several irregularities, violations of the attendance policy, and timecard fraud (¶¶45-46). McDonald complained about the payroll irregularities prior to being terminated. She had communications with Andrew Jester, whose title is Investigator V-UPD Supervisor for Office Of Inspector General.[1]

As Raymond's behavior became increasingly abusive, McDonald reported this behavior to Yarbrough. (¶39). McDonald's report to Yarbrough led to a meeting with the Deputy Clerk, Cedric Giles, who forced Raymond to apologize to McDonald. (¶¶40-41). Yarbrough followed up with McDonald after the meeting with Giles to request that she not quit. (¶42). At all times, Plaintiff met her employer's legitimate employment expectations and the write-ups she received were a sham and in retaliation for reporting the above unlawful activities. (Compl. ¶¶72-93, 99112). James Gleffe serves as labor counsel for the Clerk's Office and improperly forwarded McDonald's email complaining about additional payroll inaccuracies to Raymond. (Compl. ¶110). Raymond was irate and sent the forwarded Email to McDonald and told her to "coordinate with her" before McDonald "answers anything of a legal nature." (Compl. ¶111).

---

[1] https://salary.illinoisanswers.org/person/andrew-t-jester-9b7687d3/

McDonald Emailed Gleffe to tell him about Raymond's inappropriate emails and reiterate her fear that she was going to be fired for reporting yet another payroll issue. (Compl. ¶112). The next day, Giles fired McDonald. (Compl. ¶113). The CCCO used McDonald's alleged failure to comply with the eEAP recommendation as prextext to justify her termination. This reason was a sham because Magellan, the EAP administrator, never marked McDonald as non-compliant. (Compl. ¶118). The Clerk's Office disregarded its policy of progressive discipline in summarily terminating McDonald. (Compl. ¶119).

## I. LEGAL STANDARD – Fed. R. Civ. P. 12(b)(6)

All that is required is "a short and plain statement of the claim showing that the pleader is entitled to relief." See Fed. R. Civ. P. 8(a)(2). The purpose of a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) is to test the sufficiency of the complaint, not to decide its merits. See Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). On a motion to dismiss, the court accepts all well-pleaded allegations as true and draws all reasonable inferences in favor of the plaintiff. Jackson v. E.J. Branch Corp., 176 F.3d 971, 977-78 (7th Cir. 1999). Plaintiff is not required to present evidence in his complaint. Hunt v. Dart, 07 C 6003, 2010 WL 300397, *4 (N.D. Ill. Jan. 22, 2010). Rather, a "well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007).

Employment discrimination claims must adhere to a minimal pleading standard. See Tamayo v. Blagojevich, 526 F.3d 1084. A complaint alleging employment discrimination "need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of" a protected characteristic. Id.

The purpose of a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) is to test the sufficiency of the complaint, not to decide its merits. *See Gibson v. City of Chicago*,

910 F.2d 1510, 1520 (7th Cir. 1990). At the motion to dismiss stage, the Court must accept as true the well-pleaded allegations of the complaint. *Lett v. City of Chicago*, 946 F.3d 398, 399 (7th Cir. 2020); *see O'Boyle v. Real Time Resolutions, Inc.*, 910 F.3d 338, 342 (7th Cir. 2018), and takes judicial notice of the Village's ordinances, *see Newcomb v. Brennan*, 558 F.2d 825, 829 (7th Cir. 1977). All that is required is "a short and plain statement of the claim showing that the pleader is entitled to relief." See Fed. R. Civ. P. 8(a)(2). Plaintiff is not required to present evidence in his complaint. *Hunt v. Dart*, 07 C 6003, 2010 WL 300397, *4 (N.D. Ill. Jan. 22, 2010) ("Even after *Twombly* and *Iqbal*, a plaintiff doesn't have to come forward with evidence to survive a motion to dismiss."). In Tamayo, the Seventh Circuit reiterated: "We previously have stated, on numerous occasions, that a plaintiff alleging employment discrimination . . . may allege these claims quite generally." 526 F.3d at 1081. "A complaint need not allege all, or any, of the facts logically entailed by the claim, and it certainly need not include evidence." Id. (internal citations and quotations omitted); see also Bennett v. Schmidt, 153 F.3d 516, 518 (7th Cir. 1998). In *Cozzi v. Village of Melrose Park*, the Court's opined that the Court "offer[s] no opinion on the ultimate merits because further development of the record may cast the facts in a light different from the complaint." *Cozzi v. Vill. of Melrose Park*, 592 F. Supp. 3d 701, 705 (N.D. Ill. 2022). Because, "A complaint need not allege all, or any, of the facts logically entailed by the claim, and it certainly need not include evidence." Id. (internal citations and quotations omitted); see also Bennett v. Schmidt, 153 F.3d 516, 518 (7th Cir. 1998). See, e.g., Erickson v. Pardus, 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (citing Twombly, 550 U.S. at 555) ("[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the * * * claim is and the grounds upon which it rests."); Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 168 (1993) (holding no heightened pleading standard in Section 1983 civil rights cases).

**ARGUMENT**

4

**I. McDonald Adequately States a Claim for §1983 First Amendment Retaliation**

Despite Defendants' contentions, this Court must accept McDonald's well-pled facts as true for purposes of a Motion to Dismiss. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). A First Amendment retaliation claim requires that a plaintiff's speech be constitutionally protected, *Gunville*, 583 F.3d at 983, and a public employee's speech is protected only if she is speaking "as a citizen on a matter of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). It is well settled that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti* at 421. "[W]hether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement." *Kubiak v. City of Chi.*, 810 F.3d 476, 482–83 (7th Cir. 2016). Specifically, "when analyzing the content of the speech, the broad subject matter is not determinative," and a court "must instead focus on the particular content of the speech." Id. at 483 (internal citations omitted).

**A. McDonald Properly Alleged that she Engaged in Speech as a Private Citizen on a Matter Of Public Concern**

Despite McDonald's well-pleaded factual allegations and all reasonable inferences in her favor, Defendants still argue that McDonald's speech is not constitutionally protected because McDonald made these complaints in the course of her job duties. Plaintiff complained about payroll irregularities and unlawful conduct that was reported both internally and externally outside the Clerk's Office.

McDonald has sufficiently alleged that she was speaking on a matter of public concern. In particular, McDonald makes specific references to being shut out from the payroll system and meetings and correspondence related to the payroll discrepancies.

When Plaintiff complained to the OIG, she did not make these complaints as part of her job duties. An employee such as Plaintiff is not speaking pursuant to her official duties when she "reports misconduct outside established channels" or reports something for which she did not have any formal responsibilities. *Spalding v. City of Chicago*, 186 F. Supp. 3d 884, 904 (N.D. Ill. 2016); *see also Rose v. Haney*, No. 16 CV 5088, 2017 WL 1833188, at *5 (N.D. Ill. May 8, 2017). Plaintiff had no formal responsibilities to report to the OIG or comptroller—separate and independent body that monitors political corruption. *See Kristofek v. Vill. of Orland Hills*, 832 F.3d 785, 793 (7th Cir. 2016) ("[W]e must be especially careful in concluding that employees have spoken pursuant to their official duties when the speech concerns allegations of public corruption."). Thus, Plaintiff's complaints regarding discrimination made to the OIG and comptroller clearly do not fall under her regular job duties.

Plaintiff's complaint also involved matters of a public concern. The Supreme Court has defined "public concern" to mean "legitimate news interest," or "a subject of general interest and of value and concern to the public at the time of publication." *Meade v. Moraine Valley Cmty. Coll.*, 770 F.3d 680, 684 (7th Cir. 2014) (*quoting City of San Diego v. Roe*, 543 U.S. 77, 83-84 (2004)). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement[.]" *Connick v. Myers*, 461 U.S. 138, 147-48 (1983).

For a public employee, like McDonald, to have her speech "protected under the First Amendment, the employee must establish that she spoke as a citizen on a matter of public concern." Kubiak v. City of Chicago, 810 F.3d 476, 481 (7th Cir. 2016) (citing Garcetti v. Ceballos, 547 U.S. 410, 418 (2006)). Determining "whether [McDonald's] speech is constitutionally protected is a question of law." Id. at 481 (citing Houskins v. Sheahan, 549 F.3d 489 (7th Cir. 2008)). To determine whether McDonald spoke as a citizen or a private individual,

the Court looks to whether McDonald made the alleged statements "pursuant to her official duties." Id. (citing Garcetti, 547 U.S. at 421). "Determining the official duties of a public employee requires a practical inquiry into what duties the employee is expected to perform and is not limited to the formal job description." Id. (citing Houskins, 549 F.3d at 490); see also Garcetti, 547 U.S. at 424-25 (observing that "[f]ormal job descriptions often bear little resemblance to the duties an employee actually is expected to perform"). Next, the Court considers whether the employee's statement was a matter of public concern. Kubiak, 810 F.3d at 481. The Supreme Court has defined "public concern" to mean "legitimate news interest," or "a subject of general interest and of value and concern to the public at the time of publication." Meade v. Moraine Valley Cmty. Coll., 770 F.3d 680, 684 (7th Cir. 2014) (cleaned up) (quoting City of San Diego v. Roe, 543 U.S. 77, 83-84 (2004) (per curiam)). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement." Connick v. Myers, 461 U.S. 138, 147-48 (1983). In this analysis, "content is the most important" and "[t]he motive of the speak is relevant as part of the context . . . but is not dispositive." Kubiak, 810 F.3d at 483. To determine whether McDonald spoke as a public employee or private citizen, the Court must determine McDonald's "official duties." Kubiak, 810 F.3d at 481. Because this inquiry "is not limited to the formal job description," the Court considers both what McDonald was tasked with on paper and in practice. Id. As discussed in the background section, McDonald worked as the Director of Human Resources and describes "payroll" as one of her "duties." [Id. at ¶¶ 16, 19, 2122, 45.] "Payroll" included "auditing and monitoring employee time and attendance." [Id. at ¶¶ 19, 45.] McDonald alleges that she reported certain "payroll issues" or "irregularities," which generally were employee over- and under-payment, and individuals listed as employees who were no longer employed by the Clerk's Office. [Id. at ¶ 20.] McDonald alleges that she was retaliated against by Raymond and Yarbrough for reporting these "payroll irregularities" to the Illinois State

Comptroller, the Clerk's Office legal department, and the OIG. [Id. at ¶¶ 45, 138.] McDonald alleges that on August 25, 2020, the Illinois State Comptroller requested information from her on "whether several employees at the Clerk's office were overpaid." [Id. at ¶ 47.] After notifying Raymond, Yarbrough, and other superiors within the department about the Illinois State Comptroller's inquiry and receiving no response, "McDonald emailed the Comptroller's Office with documentation that at least $17,260.00 was overpaid to six employees before she took over the payroll." [Id. at ¶¶ 70-71.] On December 14, 2020, McDonald alleges that she emailed the Clerk's Office legal department to verify a purported wage freeze. [Id. at ¶ 109.] After the internal counsel forwarded her email to Raymond, Raymond requested that McDonald "coordinate with [her] before [McDonald] sen[t] answers to anything of a legal nature." [Id. at ¶¶ 109-11.] The complaint does not allege what the content of her complaint to the OIG was or when it occurred. [See generally id.] McDonald v. Yarbrough, 22 CV 2143, 8-10 (N.D. Ill. Mar. 31, 2023)The OIG, is an independent authority responsible for monitoring corruption in the Clerk's Office. (Compl. ¶¶ 47, 70-71, 138-139, 173).

The content of Plaintiff's complaints to the OIG—points to corruption, waste, mismanagement, and violations of state and federal laws—all clearly involved a matter of public concern. *See, e.g., Miller v. Jones*, 444 F.3d 929, 936 (7th Cir. 2006) ("Our cases have consistently held that speech alleging government malfeasance addresses matters of public concern in its substance."); *cf. Garcetti*, 547 U.S. at 425, 126 S.Ct. 1951. These instances are sufficient to allege that McDonald was speaking as a citizen, rather than an employee. Accordingly, Defendants' Motion to dismiss McDonald's First Amendment claim should be denied.

Yarbrough's personal involvement is evident based on her email communications with McDonald regarding filing IDHR complaint.

8

**B. McDonald Adequately Plead an ADEA Claim (Counts II and III) and IDHR Claim (Count IV)**

Defendants argue that Count II (age discrimination under the ADEA), Count III (Retaliation under ADEA), and Count IV (IDHR Age Discrimination) fail. Defendants incorrectly contend that Yolanda fails to identify a protected activity or to draw a causal link between her complaints of age discrimination and adverse actions. Congress enacted the ADEA "to promote employment of older persons based on their ability rather than age; to prohibit arbitrary age discrimination in employment; [and] to help employers and workers find ways of meeting problems arising from the impact of age on employment." 29 U.S.C. § 621(b). The ADEA makes it unlawful for an employer to "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual ... because of such individual's age." Id. § 623(a)(1). In general, the ADEA provides coverage for private, state, and federal employees who are forty years of age and older, id. §§ 630(f), 631(a), 633a(a), albeit with a few notable exceptions, see id. §§ 623(j), 630(f). The Act "incorporates some features of both Title VII and the Fair Labor Standards Act of 1938 [FLSA], which has led [the Supreme Court] to describe it as 'something of a hybrid.' " *McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 357, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995) (internal citations omitted).

McDonald is protected by the ADEA because she is over 40 years old. As proof of age discrimination, McDonald points to Raymond's two statements alleging ageist remarks including that Raymond failed to have good working relationships when her subordinates were older than her and then again mentioning an example where the older woman subordinate was fired (FAC ¶¶27-28). Plaintiff contends that these statements have a causal connection because they are relevant to show Raymond's bias toward subordinate employees who were older than her. While this circuit has held that "isolated comments that are no more than "stray remarks" in the workplace are insufficient to establish that a particular decision was motivated by discriminatory animus."

9

*See Cullen v. Olin Corp.*, 195 F.3d 317, 323 (7th Cir.1999). This circuit has also cautioned "that this general rule may give way where particular remarks in fact support an inference that unlawful bias motivated the decision-maker, such as when those remarks are made by the decision-maker or one having input in a decision, and are made "(1) around the time of, and (2) in reference to, the adverse employment action complained of." *Hunt v. City of Markham, Illinois*, 219 F.3d 649, 652–53 (7th Cir.2000)." Raymond's statements go beyond the mere "stray remark" standard because they come close in time to McDonald's arbitrary write-ups, differential treatment, and adverse employment actions sufficient to support an inference of discriminatory animus. In particular, McDonald alleged that as a result of Raymond's bias, Raymond submitted two false write-ups about McDonald "because McDonald had violated Raymond's unofficial policy of 'what happens in HR stays in HR'" by reporting Raymond's behavior to Raymond's superiors, including the Director of Human Rights and Ethics, the Deputy Clerk, and the Chief Ethics Officer and Legal Counsel for the Clerk's Office. Id. at ¶¶ 72, 77-80, 85-87 94. When McDonald reported the first write-up, the Director of Human Rights and Ethics emailed McDonald back to note "that she was concerned about the issues McDonald had reported about Raymond." Id. at ¶ 80. After the second write-up, on November 14, 2020, McDonald made a separate complaint that Raymond was "creating a hostile work environment" to the Director of Human Rights and Ethics, the Deputy Clerk, and the Chief Ethics Officer and Legal Counsel for the Clerk's Office. Id. at ¶ 94. Further details about McDonald's complaints to Raymond's superiors are attached as Exhibit 2. See *Coleman v. Donahoe*, 667 F.3d 835, 861 (7th Cir. 2012) (finding protected activity and a causal link where the plaintiff alleged that she was denied sick leave, received unpleasant work assignments, relocated to an unpleasant office, and suspended shortly after reporting discrimination). Defendant's Motion to Dismiss on this Count should be denied based on the foregoing.

McDonald clearly reported and complained of Raymond's ageist remarks. As stated above, McDonald reported Raymond's conduct to Raymond's superiors. Shortly thereafter, Raymond subjected McDonald to the aforementioned adverse actions based on not respecting "what goes on in HR stays in HR." As the Court opined on Defendant's last Motion to Dismiss, McDonald "is entitled to the benefit of the doubt and discovery before such claims are dismissed." *McDonald v. Yarbrough*, 22 CV 2143, 4 (N.D. Ill. Mar. 31, 2023).

Defendant's analysis of Count IV IHRA claim fails to sufficiently argue that Plaintiff is somehow precluded from recovery. For the above reasons, Defendant's Motion to Dismiss Count IV should similarly be denied.

### C. Plaintiff has Sufficiently Pled that she is Entitled to Recovery under the IWA

The Illinois Whistleblower Act bars employers from retaliating against employees who make certain disclosures, among other things. See generally 740 ILCS § 174; Roberts v. Bd. of Trs. of Cmty. Coll. Dist. No. 508, 2019 IL 123594, ¶ 40. An employer is defined as an individual or entity, including a local government, that "has one or more employees," and "any person acting within the scope of his or her authority express or implied on behalf of those entities in dealing with its employees." 740 ILCS § 174/5. The state legislature added the last clause in 2008 when it amended the statute. Ill. Public Act 95-128 § 5. Defendants insist that Yarbrough and Raymond cannot be liable under the Whistleblower Act because they are individuals, so they are not "employers" as defined by the statute. But the text of the statute says otherwise. The meaning of the statute is unambiguous: any person acting within the scope of his or her express or implied authority on behalf of the entity is considered an employer. Yarbrough was the Cook County Clerk and Raymond was the Director of Human Resources. Taking McDonald's factual allegations as true, all of the alleged insults and indignities she suffered occurred at work, in the scope of her

duties, while Yarbrough and Raymond were acting in their designated official roles as authority figures.

McDonald has adequately pleaded that Yarbrough and Raymond were acting within the scope of their authority on behalf of the Cook County Clerk's Office when they allegedly retaliated against her for reporting their conduct, payroll irregularities, and failure to follow the Clerk's policies. *See, e.g., Caulfield v. Packer Eng'g, Inc.*, 2019 IL App (2d) 170740-U, ¶ 71 (applying Act to individual who "was acting within the scope" of his "authority and control").

Illinois law prohibits employers from retaliating against an employee who discloses information to an enforcement agency where the employee "has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation." 740 ILCS 174/15(b). To prove retaliation under the Illinois Whistleblower Act, a plaintiff must show evidence of retaliatory motive. *See Williams v. Off. of Chief Judge of Cook Cnty. Illinois*, 839 F.3d 617, 627 (7th Cir. 2016) (*citing Michael v. Precision Alliance Grp.*, LLC, 351 Ill.Dec. 890 (5th Dist. 2011)). McDonald complained to various individuals within and outside of the Cook County Clerk's Office to report what she reasonably perceived as violations of law and Cook County Clerk's Office policies. *Tomanovich v. City of Indianapolis,* 457 F.3d 656, 663 (7th Cir. 2006) (citation omitted) (To constitute protected activity a complaint "must indicate the discrimination occurred because of sex, race, national origin, or some other protected class."). As stated above, McDonald made several complaints before her termination. An informal complaint to a supervisor may be a statutorily protected activity, but the complaint must be about discrimination. *See Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 851 (7th Cir. 2008) (citation omitted) (To qualify, an informal complaint must be about discrimination or there must be "sufficient facts to raise that inference."); *Casna v. City of Loves Park*, 574 F.3d 420, 427 (7th Cir. 2009) (finding that an employee's question to her supervisor-"Aren't you being discriminatory?"- was protected

12

activity); Defendants cite cases that hold that there is no individual liability under the Whistleblower Act, which rely on 2007 cases for that proposition and do not reflect the post-2008 amendments. Defendants' motion to dismiss Count IV should be denied. *Principe v. Vill. of Melrose Park*, No. 20 CV 1545, 11-14 (N.D. Ill. Aug. 18, 2020).

## D. THIS COURT SHOULD EXERCISE SUPPLEMENTAL JURISDICTION OVER COUNTS IV AND V

Again, as in Defendants' first Motion to Dismiss, they again cite threadbare reasons why the Court should decline to exercise supplemental jurisdiction, and again provide zero substantive analysis as to Counts IV and V. Arguments not properly developed are forfeited. Since Defendants do not challenge the substantive claims of Counts IV and V and therefore both counts should stand on that basis.

### E. McDonald's Claim for Indemnification against Cook County is Proper

Defendants argue McDonald's Count VI claim for Indemnification should be dismissed. *Coleman v. Sheriff of Cook County*, 16-cv-2682, 2018 WL 3740558 at *6 (N.D. Ill. 2018) ("Sheriff's and Cook County's liability rises and falls together."); *Carver v. Sheriff of LaSalle County*, 324 F.3d 947, 947-48 (7th Cir. 2003). As the Court previously stated, "[it] denies Defendants' request to dismiss Count VI, as Cook County is still an indispensable party as a potential indemnitor. See Carver v. Sheriff of LaSalle Cnty., 324 F.3d 947, 948 (7th Cir. 2003) (internal citation omitted) ("[A] county in Illinois is a necessary party in any suit seeking damages from an independently elected county officer (sheriff, assessor, clerk of court, and so on) in an official capacity. Because state law requires the county to pay, federal law deems it an indispensable party to the litigation.")." *McDonald v. Yarbrough*, 22 CV 2143, 22 (N.D. Ill. Mar. 31, 2023)

## CONCLUSION

WHEREFORE, the Plaintiff, Yolanda McDonald respectfully requests that this Honorable Court deny the Defendants' 12(b)(6) Motion to Dismiss and entitle her allegations to the benefit of the doubt. If the Court is inclined to grant Defendant's Motion in whole or part, the Plaintiff prays for an opportunity to amend her Complaint.

Respectfully submitted,

Yolanda McDonald

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that he served the foregoing document on all counsel of record via this Court's CM/ECF Filing System on July 17, 2023, and that such counsels are registered e-filers.

s/ Gianna Scatchell, esq.